**Patricia REILLY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 74–1804.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1975.

Decided March 31, 1975.

---

Bennett G. Hornstein and Bruce G. Mason, Omaha, Neb., for appellant.

William K. Schaphorst, U. S. Atty., and Michael L. Schleich, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before HEANEY and WEBSTER, Circuit Judges, and NANGLE, District Judge.*

HEANEY, Circuit Judge.

Patricia Reilly brought this medical malpractice action in the United States District Court for the District of Nebraska under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674, alleging negligent treatment by the physicians, nurses, and other agents of the Ehrling Bergquist United States Air Force Hospital. The trial was to the court. On motion of the appellant, the sole issue litigated was whether the applicable statute of limitations, 28 U.S.C. § 2401(b), barred the appellant's cause of action. The court ruled that the statute of limitations had run and dismissed the cause of action with prejudice. We affirm.

 28 U.S.C. § 2401(b) states, in relevant part:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues * * *.

When the claim "accrues" is a matter of federal law. Portis v. United States, 483 F.2d 670, 672 n.4 (4th Cir. 1973); Tyminski v. United States, 481 F.2d 257, 262 (3rd Cir. 1973); Kington v. United States, 396 F.2d 9, 11 (6th Cir.), cert. denied, 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968); Kossick v. United States, 330 F.2d 933, 935 (2nd Cir.), cert. denied, 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964); Hungerford v. United States, 307 F.2d 99, 101 (9th Cir. 1962); Quinton v. United States, 304 F.2d 234, 235 (5th Cir. 1962); Davis v. Foreman, 239 F.2d 579 (7th Cir. 1956), cert. denied, 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 724 (1957). But see Tessier v. United States, 269 F.2d 305 (1st Cir. 1959). In medical malpractice actions, the claim "accrues" when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice upon which the cause of action is based. Portis v. United States, supra, 483 F.2d at 672 n.5; Tyminski v. United States, supra, 481

* JOHN F. NANGLE, District Judge, Eastern District of Missouri, sitting by designation.

F.2d at 263; Toal v. United States, 438 F.2d 222, 225 (2nd Cir. 1971); Hungerford v. United States, *supra*, 307 F.2d at 102; Quinton v. United States, *supra*, 304 F.2d at 235. Here, the alleged malpractice occurred on or about November 18, 1968, and the appellant's claim was presented to the appropriate federal agency on December 29, 1971. In applying the federal law to the facts, the court found that the appellant should have discovered her cause of action in August, 1969, more than two years prior to the filing of the administrative claim.

Appellant Reilly is a dependent of an Air Force Lieutenant Colonel who, at the time of the alleged malpractice, was living in Offutt, Nebraska. She was a twenty-one year old college student and had suffered from asthma for approximately five years. On November 18, 1968, she experienced a severe asthma attack and was admitted, in the early hours of the evening, to the intensive care unit of Ehrling Bergquist United States Air Force Hospital. Captain Peter Soteres, M.D., was the treating physician. Dr. Soteres characterized the appellant's condition as "near death" and prescribed that she be placed on a mechanical respirator. The respirator treatment required nasal endotracheal intubation and several attempts were necessary before the appellant was successfully intubated. Reilly breathed by means of the mechanical respirator for eighty continuous hours.

The appellant had previously experienced severe asthma attacks and protested to Dr. Soteres against the use of the mechanical respirator. She characterized her attack as no more severe than previous attacks and was certain that the normal, less drastic, treatment would be successful. Nevertheless, the appellant acquiesced to the doctor's prescription despite her reservations. Dr. Soteres did not inform her of the risks involved in the use of the mechanical respirator.

Reilly was discharged from the hospital on November 29, 1968. She complained to Dr. Soteres that her throat was sore and hoarse, and he assured her that the condition was a normal aftereffect of the endotracheal intubation that would quickly heal. The condition did not, however, heal, and it is this use or operation of the mechanical respirator that the appellant alleges constitutes medical malpractice.

The operation of the endotracheal tube or cuff of the mechanical respirator caused an unusual amount of scar tissue to form about the appellant's trachea: a condition known as tracheal stenosis. This tracheal stenosis put Reilly in acute respiratory distress, for the trachea was extensively constricted. She was readmitted to the hospital on January 14, 1969, and a low tracheotomy was performed to allow unrestricted breathing. The appellant was then transferred by air evacuation to Wilford Hall United States Air Force Hospital at Lackland Air Force Base, Texas. There, she underwent tracheal dilation treatment until April, 1969, when she returned to her home in Nebraska. The tracheal dilation treatment did not cure the tracheal stenosis. Reilly was unable to speak from April to August, 1969.

The trial court found that the appellant knew of the causal relationship between the tracheal stenosis and the November 18, 1968, treatment in January, 1969.[1] She was then informed by Dr. Soteres and Dr. Yonkers, an ear, nose and throat specialist, that the tracheal stenosis was a rare aftereffect of the previous endotracheal intubation of the mechanical respirator.

Once the appellant knew of the allegedly negligent acts that caused her injury, she was under a duty to exercise reasonable diligence in bringing suit. *See* Portis v. United States, *supra*, 483 F.2d at 672; Toal v. United States,

---

1. This finding of the trial court is aptly supported by the record. The following was brought out during the cross-examination of the appellant:

Q. So you knew in January of 1969 that your throat was blocked off because the tube was placed down there?
A. I would have to say yes to that.

*supra*, 438 F.2d at 225; Quinton v. United States, *supra*, 304 F.2d at 241. The concept of reasonable diligence does not, however, ignore the appellant's reliance on the statements of her doctors that the tracheal stenosis was, a normal occurrence of the treatment she had received or her faith in their efforts to cure it. *See* Kossick v. United States, *supra*, 330 F.2d at 936. But when the facts became so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations began to run against the appellant's cause of action. Ashley v. United States, 413 F.2d 490, 492 (9th Cir. 1969); Brown v. United States, 353 F.2d 578, 580 (9th Cir. 1965). *See* Jones v. Rogers Memorial Hospital, 143 U.S. App.D.C. 51, 442 F.2d 773, 775 (1971).

▮ Paramount significance was placed by the trial court on the fact that after three months of treatment, the tracheal stenosis was not cured and, as a result, the appellant was unable to speak from April to August, 1969. The court viewed this extreme and unexpected consequence as sufficient to put the appellant on notice that she may have been legally wronged. The court so concluded despite the fact that Reilly was assured by her doctors that the tracheal stenosis was a normal, albeit rare, consequence of endotracheal intubation. It found that the appellant was not only aware of the causal relationship between her affliction and the previous treatment, but that she questioned the success of the treatment

from an early date. The court was not clearly erroneous in finding that the appellant should have been aware of her cause of action by August, 1969, despite the representations of her doctors.[2]

▮ Reilly finally places reliance on the continuous treatment rule and argues that the statute of limitations had not run as a matter of law. The fact that the appellant continued to receive treatment for her condition well into the two-year period prior to the filing of her administrative claim does not change the result here.[3] The reliance on the continuous treatment rule is misplaced, for the rule does not apply when the claimant is aware of the acts constituting negligence. The rule

\* \* \* [I]s premised on the notion that a person should not be required to investigate the cause of his injuries or to bring suit while receiving necessary treatment for the injuries. The interest in preventing stale claims convinces us that this rationale for the rule has no merit when a person knows of the acts constituting negligence. In this situation little, if any, investigation is necessary to determine whether a meritorious cause of action exists. \* \* \*

Tyminski v. United States, *supra*, 481 F.2d at 265 n.5.

There being no error of fact or law, the decision of the District Court is affirmed.

**2.** It is axiomatic that our review of the trial court's factual findings is circumscribed by the clearly erroneous rule, and that the burden is upon the appellant to demonstrate error. United States v. United States Gypsum Company, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Snodgrass v. Nelson, 503 F.2d 94, 95–96 (8th Cir. 1974) (per curiam); Federal Rules of Civil Procedure 52(a).

**3.** The appellant's physician-patient relationship with Dr. Soteres terminated in January, 1969. Accordingly, we express no opinion on the issue whether continuous treatment by the original treating physician tolls the running of 28 U.S.C. § 2401(b). *See* Ciccarone v. United States, 486 F.2d 253, 257 (3rd Cir. 1973); Brown v. United States, 353 F.2d 578, 580 (9th Cir. 1965).