Isaac Newton HULVER, Appellee,

v.

UNITED STATES of America, Appellant.

Nos. 76–2010 and 76–2011.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1977.

Decided Sept. 14, 1977.

Rehearing Denied Oct. 12, 1977.

---

Mark H. Gallant, Atty., Appellate Section, Civil Div., Dept. of Justice, argued, Leonard Schaitman, Atty., Appellate Section, Civil Div., Dept. of Justice, Washington, D. C., for appellant; Barbara Allen Babcock, Asst. Atty. Gen., Ronald R. Glancz and Bert C. Hurn, U. S. Atty. (former), Kansas City, Mo., on appendix, appellant's brief and reply brief.

William H. Pickett, Pickett & Midkiff, Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, STEPHENSON and WEBSTER, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

The sole issue presented by these appeals by the United States of America is whether the trial court erred in holding that plaintiff's medical malpractice claim was not barred by the two-year limitation period of 28 U.S.C. § 2401(b). Plaintiff in his brief specifically agrees that the only issue raised by these appeals is when the medical malpractice cause of action accrued under 28 U.S.C. § 2401(b).

All proceedings were before Chief Judge Becker without a jury. The Government's motion for summary judgment was denied for reasons stated in a memorandum opinion reported at 393 F.Supp. 749 (W.D.Mo. 1975). Thereafter a separate trial was held on the liability issue and later a trial was held on the damage issue. These appeals are from the final judgment on the issue of liability and damages entered on June 24, 1976, and the supplemental findings of fact, conclusions of law, and final judgment in favor of plaintiff on the issue of liability and damages entered on August 9, 1976. Detailed memorandum opinions (not reported) were filed in support of the judgments.

Three separate operations were performed on plaintiff Hulver at the Veterans Hospital at Kansas City, Missouri. The first operation occurred on October 17, 1968, with subsequent operations on December 12, 1968, and March 10, 1969. The first two operations were performed by Dr. Nosti who severed his connections with the Veterans Hospital on December 31, 1968. The March 1969 operation was performed by Dr. Crosby, a senior resident surgeon. The court, on the basis of detailed findings of fact, determined negligence on the part of

Dr. Nosti and the Veterans Administration in connection with the October 17 operation only. Judge Becker in his unreported memorandum opinions makes detailed factfindings and conclusions of law, and describes the nature of the operations very well. The ultimate determination that Dr. Nosti was negligent with respect to the first operation, at least in some respects, is supported by substantial evidence and is not challenged in these appeals. Accordingly the details of the operation are significant only to the extent that they bear on the limitations issue. Pertinent facts will be set out in connection with our discussion of when the cause of action accrued.

We now reach the only issue before us and determine that plaintiff's cause of action was barred by his failure to file a claim within two years of the time his cause of action accrued for the reasons hereinafter stated.

The operation with respect to which the trial court found Dr. Nosti and the Veterans Hospital negligent was performed on October 17, 1968. The required written claim for negligent malpractice is dated February 18, 1971. The trial court determined that it was filed with the Veterans Administration on February 22, 1971.[1]

The crucial issue in these cases is whether plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice upon which his cause of action is brought more than two years prior to February 1971.

The applicable law with respect to accrual of negligent malpractice cases was thoroughly considered and stated in our recent case of *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975). We there stated and held:

28 U.S.C. § 2401(b) states, in relevant part:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues * * *.

When the claim "accrues" is a matter of federal law.

\* \* \* \* \* \*

In medical malpractice actions, the claim "accrues" when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice upon which the cause of action is based. *Id.* at 148.

\* \* \* \* \* \*

Once the appellant knew of the allegedly negligent acts that caused her injury, she was under a duty to exercise reasonable diligence in bringing suit. *Id.* at 149.

\* \* \* \* \* \*

But when the facts became so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations began to run against the appellant's cause of action. *Id.* at 150.

[Numerous cases cited in support of the foregoing statements are omitted.]

The *Reilly* court determined that the facts of the case were such that the plaintiff should have been aware of her cause of action more than two years prior to the filing of the administrative claim.

In applying the law as established in *Reilly* to the facts of this case, we are convinced that the determination made by the district court that the cause of action did not accrue more than two years prior to the filing of the administrative claim was not supported by substantial evidence and is clearly erroneous.

Plaintiff was a World War II veteran. He was fifty-six years of age at the time of his 1968 operation. He received severe combat wounds in Germany in his abdomen and right leg. Fifteen operations were performed by military surgeons. Plaintiff was discharged from the service in 1945 with 100% disability which was reduced to 70% in

---

1. Whether the claim was filed on February 18 or February 22, 1971, makes no difference in the result under the facts of this case.

1946. He has had considerable trouble with his right leg ever since but he has not had trouble with his left leg. From 1953 to 1971 plaintiff was employed in the monotype department of the Kansas City Star. He had a history of generalized arteriosclerosis and had suffered a heart attack in 1956. He was referred to the Veterans Hospital in 1968 by his private physician for diagnosis and treatment of numbness, paresthesia, and claudication, or cramplike pains, in his right hip and leg which caused him to limp. The October 1968 operation is described as a bilateral aortoiliac endarterectomy, the operation performed by Dr. Nosti. He removed obstructive plaque from the left and right common iliac arteries (which branch off from the aorta in a Y shape). As a result of the operation, plaintiff's left leg, which had previously caused him no pain or trouble, was disabled by a clot that formed in the left branch of the arterial tree in the weeks following the operation. In addition, his sexual function was seriously impaired. The second operation performed by Dr. Nosti was an unsuccessful attempt to remove the clot in the left leg by an incision in the left leg. The third operation performed by Dr. Crosby was a bypass operation involving the insertion of a plastic tube. As above stated, no negligence was found by the trial court with respect to the second and third operations and no cross appeal has been taken from such finding and determination.

With respect to the loss of sexual functions, the evidence establishes that the plaintiff had normal relations with his wife just prior to the October operation and that shortly after his return from the hospital after the operation he discovered his lack of sexual functions, and subsequent attempts showed that such condition continued. The trial court, in its unreported memorandum filed August 9, 1976, states:

> Plaintiff discussed his sexual impairment with Dr. Nosti sometime prior to his readmission to the V. A. Hospital on December 2, 1968, probably during his examination by Dr. Nosti on November 20. Dr. Nosti told plaintiff he was afraid he might have severed some nerves. However, Dr. Nosti did not further elaborate on that statement to explain that sexual impairment was a risk known to be associated with an aortoiliac endarterectomy, or that the damage was irreparable. Plaintiff testified that he did not understand what Dr. Nosti meant by his statement.

On November 20, 1968, plaintiff filed an application with the Veteran's Hospital for an increase in his disability rating in which he stated:

> Have lost the basic functions of Sexual Intercourse. Am now sterile. Previous Sexual Intercourse average 3 times per week now zero.

As the cause of this disability, plaintiff stated:

> Had Surgical Intervention for Arterial Blockage with Scar Ranging from Breast Bone to right Femoral Region.

We determine that the finding in the above extract clearly and conclusively demonstrates that the plaintiff had sufficient information prior to December 1968 that his sexual functions were severely impaired and that such impairment was caused by the severing of a nerve during the October operation and that such damage was likely irreparable. Such view is strongly supported by the November 20, 1968, claim for increased disability filed with the Veterans Administration.

With respect to the claim of negligent injury to the left leg, plaintiff claimed and the court ruled that the plaintiff was not aware that acts of malpractice may have occurred prior to January 1971 when he and his lawyer examined the hospital records which disclosed that the operation had included the left leg artery. His lawyer then called his attention to the fact that the hospital operation records disclosed that an incision had been made to remove a plaque an inch below the bifurcation of the aorta in the left iliac artery.

Plaintiff's left leg injury claim is based primarily on Dr. Nosti's alleged violation of plaintiff's direction not to touch his left leg. Plaintiff testified:

THE COURT: They want to know when you realized first that an operation had been performed on your left leg. You say you woke up.

\*   \*   \*   \*   \*   \*

THE COURT: He was told, as well as he had the symptoms. You did learn that at sometime there was an operation on your left side performed in October 1968, didn't you?

\*   \*   \*   \*   \*   \*

THE WITNESS: When I woke up from coming from the operating room, Your Honor, I knew there was something wrong with my left leg, which I had told them not to do.

THE COURT: He is trying to ask you when you first became aware in some manner that the operation had involved the artery leading to your left leg.

\*   \*   \*   \*   \*   \*

THE WITNESS: Left leg. When I woke up from the anesthetic.

Prior to the operation in December 1968 to attempt to remove the block in the left artery, plaintiff had a discussion with Dr. Nosti. He testified with respect to such conversation as follows:

Q   Did Dr. Nosti ever tell you why he went into the area on the left leg in October 17, 1968, operation?

A   No, he didn't say.

Q   Did you ever ask him?

A   I just asked him why, after I had told him not to go in there and fool with the left side, that he did it.

**2.** The Government in the trial court raised the issue that the October 17 operation constituted an assault and battery and hence did not fall within the scope of actions authorized by the Federal Tort Claims Act for the reason that the court is without jurisdiction of an injury caused by an assault and battery by reason of the exclusion of assault and battery contained in 28 U.S.C. § 2680(h). Such defense is discussed by the trial court in its reported opinion on the summary judgment at pp. .752 and 753 of 393 F.Supp. It is also discussed in the memorandum of August 9, 1976, awarding final judgment. The trial court there holds that the evidence did not support a finding that Dr. Nosti

Mr. Spiegelhalter, a fellow employee of plaintiff at the Kansas City Star, testified that on the occasion of his visit with plaintiff at the hospital shortly after the operation: "He made a remark, he said, by God, when I went in, my left leg was perfectly well, and I told them not to bother it, and he said, apparently they did." Plaintiff's brother Eddie testified he told him shortly after the operation, "Eddie, they have ruined my good leg."

In *Brown v. United States*, 353 F.2d 578, 580 (9th Cir. 1965), the court states:

"To expect a doctor, voluntarily, absent an inquiry and absent special situations not existent here, to affirmatively advise a patient that he has been negligently treated, is unrealistic, and no cases have ever so held."

Dr. Nosti did not dispute plaintiff's statement to him that he had operated on his left leg, and the left leg operation is clearly shown on the hospital report of the operation. The evidence, including plaintiff's own statements, establishes that prior to February 1969 plaintiff had possession and knowledge of facts sufficient to alert a reasonable person that there may have been negligence relating to the grievance for which the complaint was subsequently made.[2]

■ We hold that the trial court's determination that plaintiff did not have possession of sufficient facts prior to February 1969 to put a reasonable person upon inquiry as to whether a malpractice cause of action existed is not supported by substantial evidence and is clearly erroneous.

did intentionally perform an operation on the left leg in disregard of plaintiff's instructions not to touch the left leg, but rather that Dr. Nosti negligently failed to understand plaintiff's directions, probably because of language difficulties in communication. Plaintiff's written consent was broad enough to cover the left leg surgery.

In any event, if the court had found the operation was in violation of plaintiff's informed consent, an action would likely be barred by the assault and battery exception under our holding in *Moos v. United States*, 225 F.2d 705 (8th Cir. 1955).

The trial court in its August 9, 1976, opinion, states:

> Even if plaintiff showed a lack of diligence in waiting until December, 1970 to initiate an investigation into possible acts of malpractice, it would have been unreasonable for him to initiate an investigation prior to April 15, 1969, when his continuing treatment at the V. A. Hospital ended and the permanence of the injury to his left lower extremity became apparent to him.

In *Brown v. United States, supra* at 580, the court stated:

> The reason for the rule which appellants advance is that one is presumed to repose confidence in the individual doctor to whom he entrusts his medical problems and that the confidential relationship excuses the making of inquiry which questions the care which has been or is being given during the existence of the relationship.
>
> We cannot accept the proposition that one who continues to receive treatment from succeeding government physicians is, regardless of the circumstances, excused from conducting diligent inquiry into the conduct of a doctor with whom a personal relationship has been terminated and who is not claimed to have acted in direct concert with the succeeding physicians.

*Accord, Ciccarone v. United States,* 486 F.2d 253, 257 (3d Cir. 1973); *Ashley v. United States,* 413 F.2d 490, 493 (9th Cir. 1969). *See Reilly v. United States, supra.*

 It is also well-established that one who knows he has suffered from medical malpractice may not postpone an action until the full extent of his damage is ascertained. *Ashley v. United States, supra; Toal v. United States,* 438 F.2d 222, 225 (2d Cir. 1971). Dr. Nosti's care of plaintiff ceased no later than December 31, 1968. Dr. Crosby, who took over the treatment, had no prior connection with plaintiff's treatment. Any reason for delaying a reasonable inquiry into the facts ceased no later than December 31, 1968.

As heretofore determined, plaintiff had adequate information to put him on inquiry with respect to his malpractice claims more than two years prior to his filing of the administrative claims. The trial court's determination to the contrary is not supported by substantial evidence and is clearly erroneous.

The judgment is reversed. The case is remanded to the trial court with directions to dismiss the complaint on the ground that the action is barred by 28 U.S.C. § 2401(b).

Reversed and remanded.