**Donald SNYDER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 81–4199–CV–C–5.

United States District Court, W. D. Missouri, C. D.

April 8, 1982.

---

Glenn R. Gulick, Jr., Joplin, Mo., for plaintiff.

Mark J. Zimmermann, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

The Government has moved for dismissal of the plaintiff's medical malpractice action on the ground that the plaintiff's claim is barred by the Federal Tort Claims Act two-year statute of limitations. 28 U.S.C. § 2401(b). Both parties have briefed the question of whether the plaintiff's malpractice claim is barred by the statute of limitations and have agreed to delay further discovery pending the ruling on the Government's motion to dismiss. For the reasons which follow, the Government's motion to dismiss is granted.

### I.

The plaintiff has brought this malpractice action against the Government on the basis of a negligent percutaneous cordotomy which was performed on the plaintiff in December of 1974 by a neurosurgeon at the Veteran's Administration Hospital in Gainesville, Florida. The cordotomy, which consists of inserting electrodes into the spinal cord and burning nerve cells in order to prevent pain impulses emanating from certain parts of the body from reaching the brain, was performed to alleviate the severe pain from which the plaintiff was suffering as a result of the removal of a cancerous left lung and would suffer from the cancer. The neurosurgeon had suggested that the plaintiff undergo a cordotomy after he diagnosed the cause of plaintiff's illness as an extensive brachial plexus tumor. He told the plaintiff that, based on his knowledge of other cases, the plaintiff had approximately six months to live. The plaintiff opted for the cordotomy rather than over-medication for relief from his pain.

According to the deposition testimony of the plaintiff, the plaintiff continued to suffer from pain after the cordotomy had been performed. The pain had subsided for several hours after the operation, but soon resurfaced. The plaintiff stated that he knew that the cordotomy had been unsuccessful in alleviating his pain by January of 1975.

In January of 1975, the plaintiff was readmitted to the Veteran's Administration Hospital. During this admission, the plaintiff was told that the neurosurgeon had incorrectly diagnosed his illness as an extensive brachial plexus tumor and that the pain which he was suffering was due to the surgery and radiation therapy.

In 1979, the plaintiff visited a physician in Columbia, Missouri. According to the plaintiff's deposition testimony, that "after many tests were run and many different treatments were tried," the physician, who had been retained as a consultant, told the plaintiff that his pain was the result of the unsuccessful cordotomy. He stated that he did not know the cause of his pain until he was informed by the consulting physician that it was due to the unsuccessful cordotomy which had been performed in 1974. The plaintiff sought legal advice after visiting with that physician.

### II.

A provision of the Federal Tort Claims Act bars any tort claim against the United

States unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). A claim "accrues" when a claimant knows of both the existence and cause of the injury. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). *Accord, Wollman v. Gross*, 637 F.2d 544, 548 n. 4 (8th Cir. 1980). *Cf. Hulver v. United States*, 562 F.2d 1132, 1136 (8th Cir. 1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978) (similar "possession and knowledge of sufficient facts" standard for accrual in malpractice action).

It can be determined from the deposition testimony of plaintiff that he knew of both the existence and cause of his injury not later than January of 1975. The cordotomy was performed in December of 1974. The plaintiff testified that the neurosurgeon had promised him that the cordotomy would alleviate the pain that would accompany the extensive brachial plexus tumor which had been diagnosed. It was evident to the plaintiff only hours after the cordotomy that the cordotomy had been unsuccessful in alleviating any of his pain.

In January of 1975, plaintiff testified that he was expressly informed by another physician that the neurosurgeon had incorrectly diagnosed his illness as an extensive brachial plexus tumor, that he did not have a tumor, that he would not die of cancer in six months, that the cordotomy had failed to alleviate his pain, and that the surgery he had undergone over the course of six months and the radiation therapy was the source of his pain. By the plaintiff's own admission, he was expressly aware of his injury and its cause no later than January of 1975.

The facts of this case are most similar to another cause recently litigated in this District and in the Eighth Circuit Court of Appeals. *See, Hulver v. United States*, 562 F.2d 1132 (8th Cir. 1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978). In *Hulver*, the plaintiff filed suit in February of 1971 against the Government for an allegedly negligent operation which was performed by a Veteran's Administration Hospital surgeon in October of 1968. The operation, a bilateral aortoiliac endarterectomy, left the plaintiff with a disabled left leg and impaired the plaintiff's ability to function sexually. *Id.* at 1135. The plaintiff was immediately aware of his inability to function sexually shortly after his return from the hospital and notified the hospital of the impairment in November of 1968. *Id.* With respect to the disabled left leg, the plaintiff stated that he was aware that something had happened to his leg when he woke up immediately after the operation and repeatedly told those who visited him in the hospital that his left leg had been ruined in the operation. *Id.* at 1136. From this evidence the appellate court determined that the plaintiff had "possession and knowledge of facts sufficient" by November of 1968 to alert him that the operation had been negligently performed and thus, that a complaint filed in February of 1971 was barred by the two-year statute of limitations. *Id.*

The plaintiff in *Hulver* had asserted that he was not aware of the possible malpractice until his lawyer had examined the hospital records in January of 1971. *Id.* at 1135. The appellate court held, however, that a person cannot postpone a malpractice action until the full extent of his damages are known, and that the two-year period began to run when the plaintiff gained adequate information to put him on inquiry. *Id.* at 1136.

It is clear that the plaintiff, in the case at bar, was told that the cordotomy was unsuccessful in January of 1975. The information given by the physician in 1979 only corroborated what had been told to the plaintiff in 1975. Since the plaintiff knew of the existence and cause of his injury in January of 1975, his cause of action accrued at that point. Thus, the plaintiff's action is barred by the two-year statute of limitations.

III.

It cannot be gainsaid that statutes of limitation often make it impossible to en-

force what might be perfectly valid claims. *Kubrick, supra,* 100 S.Ct. at 361. *But see, Wollman, supra* at 550 (Adams, J., dissenting). But the statute represents a persuasive legislative intent to put the adversary on notice to defend within a specified period of time. The right to be free from stalé claims, in time, comes to prevail over the right to prosecute them.

Accordingly, it is hereby

ORDERED that the defendant's motion to dismiss is granted. It is further

ORDERED that the parties bear their own costs.