**Floyd L. WEHRMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 4–85–790.**

United States District Court, D. of Minnesota, Fourth Division.

Nov. 20, 1986.

---

Robert Wm. Rischmiller, Rischmiller, Wasche & Knippel, Minneapolis, Minn., for plaintiff.

Jerome G. Arnold, U.S. Atty., and Robert M. Small, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. Defendant's motion will be granted.

## FACTS

Plaintiff Floyd L. Wehrman is completely disabled due to an injury (organic brain syndrome) suffered in military service. During the period 1962–1984 plaintiff received treatment at the Minneapolis Veterans Administration (VA) Medical Center. A capsule summary of the treatment received by plaintiff during this period includes the following:

| Date | Diagnosis | Treatment |
|---|---|---|
| April-June, 1962 | Psychomotor convulsive disorder with psychotic episodes | Hospitalization |
| January, 1970 | Mixed hemorrhoids; convulsive disorder | Hospitalization— Hemorrhoidectomy and proctoscopy performed |
| July-September, 1981 | Hiatal Hernia, Schatzki's ring dilated, reflus esophagitis | Hospitalization— endoscopy performed |
| February 3, 1982 | Barium swallow examination | Outpatient |
| July 14, 1982 | Barium swallow examination | Outpatient |

Plaintiff first began to experience throat and chest discomfort in 1962. Plaintiff complained of inability to eat or sleep and extreme chest and throat pain. VA physicians advised plaintiff that "medical management" of his condition, *i.e.*, prescription drugs and certain lifestyle adaptations, was the preferred alternative. Plaintiff was advised that surgery was unduly dangerous. Plaintiff agreed to the recommended medical management. Nonetheless, his condition steadily worsened. Plaintiff consulted with VA physicians on numerous occasions during the period 1962–1984. In August, 1981 plaintiff was admitted to the VA hospital with complaints of difficult digestion, stomach problems, swallowing difficulty, and chest pain. VA physicians diagnosed plaintiff as suffering from hiatal hernia, Schatzki's ring dilated, seizure disorder, and reflus esophagitis. Plaintiff was again advised that surgery presented a grave risk and that medical management was the only feasible alternative. In January, 1984 plaintiff consulted Dr. Carl A. Brown, a private physician. Plaintiff was referred by Dr. Brown to Dr. Mark Schmidt, who performed an endoscopy on the plaintiff. Schmidt diagnosed plaintiff as suffering from severe esophagitis with ulcerations, injury to a sphincter and a large hiatus hernia. Schmidt referred plaintiff to Dr. John Linner for a surgical assessment. Linner advised plaintiff that surgery was a viable alternative. Plaintiff then consulted with the chief of surgery at the Minneapolis VA, who advised him that surgery was unduly dangerous. Plaintiff chose to disregard the advice of VA physicians, and on March 8, 1984, Linner performed surgery on plaintiff at the Metropolitan Medical Center in Minneapolis. Plaintiff contends that the results of the surgery have been "tremendous," and that he has "no food restrictions, I sleep well and my chest and lower part of my body feel good." Affidavit of Floyd L. Wehrman in Opposition to Defendant's Motion for Summary Judgment ¶ 10.

Plaintiff subsequently submitted an administrative claim to the VA on October 24, 1984, as required by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. Plaintiff alleges in his complaint that "[f]rom 1962 through and including March, 1984, various agents, servants and employees of the Veterans Administration ... negligently and otherwise wrongfully failed to perform reasonable and necessary examinations, diagnostic tests and treatment and otherwise negligently and wrongfully failed to obtain reasonable and necessary surgical and/or other surgical consultations with respect to the medical condition of Plaintiff including esophagitis, hiatus hernia with reflus and related medical conditions.... Defendant ... negligently and otherwise wrongfully failed to inform the Plaintiff of alternative methods of treating said medical conditions.... As a direct result of the negligence of Defendant, Plaintiff sustained a progressive worsening of his medical condition ... great pain of body and mind ... was prevented from transacting his business and personal activities and ... has sustained medical expenses...." Complaint ¶ IV–VI. Plaintiff seeks $1 million in damages.

Defendant now brings this motion for summary judgment on the ground that plaintiff's cause of action is time-barred.

## DISCUSSION

A defendant is not entitled to summary judgment unless the defendant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt and unless the nonmoving party is not entitled to recover under any discernible circumstances. *E.g., Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir.1980). In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *E.g., Hartford Accident & Indemnity Co. v. Stauffer Chemical Co.*, 741 F.2d 1142, 1144–45 (8th Cir.1984). The nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Salinas v. School District of Kansas City*, 751 F.2d 288, 289 (8th Cir.1984).

The FTCA provides that tort claims against the United States shall be barred unless "presented in writing to the appropriate Federal Agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The question of when a particular claim "accrues" within the meaning of the FTCA is one of federal law which must be determined by the Court in light of the surrounding circumstances. *United States v. LePatourel*, 593 F.2d 827, 830 (8th Cir. 1979); *Wollman v. Gross*, 637 F.2d 544 (8th Cir.1980). The United States Court of Appeals for the Eighth Circuit has stated that "[t]he general rule under the [FTCA] is that a tort claim accrues, for statute of limitations purposes, at the time of the plaintiff's injury." *Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir.1983). Where, as in the case at bar, the precise date of injury is in dispute, the United States Supreme Court has made clear that two factors are of primary significance in assessing the date of accrual: (a) plaintiff's awareness of injury, and (2) plaintiff's awareness of the injury's cause. *United States v. Kubrick*, 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). As stated by the Eighth Circuit in *Snyder:*

> The critical issue . . . is determining the time [plaintiff] actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury.

*Snyder*, 717 F.2d at 1195; Restatement (Second) of Torts § 899, Comment e, 444–445 (1979).[1]

Plaintiff filed his administrative claim on October 24, 1984. Therefore, if plaintiff's cause of action accrued prior to October 24, 1982, plaintiff's action is time-barred.

■ In *Kubrick* the Supreme Court declared that "[a] plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the . . . legal community." *Kubrick*, 100 S.Ct. at 360. Accordingly, accrual of an FTCA medical malpractice claim does not "await awareness by the plaintiff that his injury was negligently inflicted." *Kubrick*, 100 S.Ct. at 360. Rather, "once armed with knowledge of his injury and its cause, a reasonable claimant should then seek advice as to whether he had a possible cause

---

1. In a diversity action the United States District Court for the District of Minnesota applies Minnesota statutory limitations periods. *Cuthbertson v. Uhley*, 509 F.2d 225 (8th Cir.1975). Minnesota law provides for a two-year limitations period in a medical malpractice action. Minn. Stat. § 541.07(1). Under Minnesota law, an action for medical malpractice accrues when the physician's treatment of the particular condition ceases. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982), *quoting Grondahl v. Bulluck*, 318 N.W.2d 240, 242–43 (Minn.1982). In a disputed case, the courts will consider three factors in determining when treatment ceases:

> (1) whether there is a relationship between physician and patient with regard to the illness; (2) whether the physician is attending and examining the patient; and (3) whether there is something more to be done.

*Grondahl*, 318 N.W.2d at 242–43. The Minnesota law test is at odds with the federal law test in some respects, as discussed *infra*. As such, plaintiff's reliance on the Minnesota law test is misplaced.

of action." *Dessi v. United States*, 489 F.Supp. 722, 724–25 (E.D.Va.1980). Failure to meet this burden of investigating possible tort claims against the United States will operate to defeat an FTCA claim brought after the section 2401(b) limitations period has run. *See, e.g. West v. United States*, 592 F.2d 487 (8th Cir.1979) (plaintiff's cause of action accrued on date government physician placed leaking hot water bottle in infant's hospital crib, not on date that plaintiff learned the identity of the negligent physician and that he was employed by the government, as argued by plaintiff); *Snyder v. United States*, 537 F.Supp. 633 (W.D.Mo.1982), *reversed in part on other grounds*, 717 F.2d 1193 (8th Cir.1983) (failure to diagnose claim accrued on date plaintiff learned of the erroneous diagnosis).

*Kubrick, Dessi,* and *West* involved affirmative acts of negligence inflicting clearly identifiable injuries. In contrast are cases such as the instant case, wherein plaintiff's injuries stem, not from an affirmative negligent act of his treating physician, but rather from an alleged failure to take certain action. Application of the cause and injury standard to a failure to diagnose, warn, or treat claim is much more problematical. In such cases, the courts have identified a number of relevant factors. For example, the United States Court of Appeals for the Ninth Circuit has declared that when a claim of malpractice is based on a failure to diagnose, warn, or treat a patient for a pre-existing injury, rather than affirmative conduct creating a new injury, a claim accrues under section 2401(b) when:

> the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition ...

*Raddatz v. United States*, 750 F.2d 791, 796 (9th Cir.1984), *quoting Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir.1983). In *Raddatz* plaintiff brought a claim alleging negligent failure to provide medical treatment for ongoing pain stemming from a negligently performed medical procedure. The Ninth Circuit found that plaintiff's failure to treat claim accrued on the date her private physicians made her aware that her condition had become more serious and that the negligently performed medical procedure was the cause of her worsened condition. The court took into account the fact that plaintiff's government physician had "repeatedly assured her that her condition was a normal consequence of" the medical procedure. *Raddatz*, 750 F.2d at 796. Because of these assurances from the primary treating physician, plaintiff's failure to file suit until two years and one day following the medical procedure did not bespeak a failure of reasonable diligence, the court found. *Raddatz*, 750 F.2d at 796, *citing Reilly v. United States*, 513 F.2d 147, 150 (8th Cir. 1975). In *Augustine* plaintiff brought failure to diagnose and treat claims against Air Force dentists, claiming that their failure to diagnose and treat a "bump" in his mouth led to the development of metastatic cancer. *Augustine*, 704 F.2d at 1078. The court found that where a claim of medical malpractice is based on a failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient, or the mere continuance of that same undiagnosed problem in substantially the same state, rather, the injury is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. The court concluded that "[t]he issue of accrual in this case thus depends upon when and if plaintiff discovers or through the exercise of reasonable diligence should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition." *Augustine*, 704 F.2d at 1078. Because accrual was a disputed fact issue, the court reversed the district court's dismissal of plaintiff's claims and remanded for further proceedings. *Augustine*, 704 F.2d at 1079.

The *Augustine-Raddatz* approach was adopted by the United States Court of Appeals for the Seventh Circuit in *Green v. United States*, 765 F.2d 105, 109 (7th Cir. 1985). In *Green*, plaintiff received intermittent radiation therapy at a VA hospital from 1978 to 1980. On October 13, 1982, plaintiff filed an FTCA action against the VA, alleging that he had suffered substantial injury due to excessive radiation administered by VA personnel. Plaintiff included allegations of failure to diagnose, failure to treat, and failure to provide appropriate post-radiation treatment. Applying the *Augustine-Raddatz* standard, the Seventh Circuit found that plaintiff's cause of action had accrued in August, 1980, when the VA allegedly denied him medical treatment for his radiation induced injuries. The court found that "[a] plaintiff, in the exercise of reasonable diligence, should have become aware of his injury" in 1980. *Green*, 765 F.2d at 109.

In contrast to the approach taken by the Ninth and Seventh Circuits, other courts have focused on the gravity of the plaintiff's injuries in assessing the date of accrual. In *Sanders v. United States*, 551 F.2d 458 (D.C.Cir.1977), the United States Court of Appeals for the District of Columbia stated:

"when the facts [become] so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations [begins] to run against the appellant's cause of action."

*Sanders*, 551 F.2d at 460, *quoting Reilly*, 513 F.2d at 150. In *Sanders* the plaintiff, a registered nurse, experienced a gradual worsening of her condition from the date of a negligently performed medical procedure in 1965 to the date she filed her FTCA claim in 1974. The plaintiff had obtained permanent possession of her medical records in 1970. The court found that plaintiff's grave medical condition "could not have been ignored by one of her educational and professional background" and that plaintiff had "acted contrary to the practice of the nursing profession and failed in her obligation to exercise reason-able diligence in determining the facts giving rise to her injury." *Sanders*, 551 F.2d at 460. The court was also swayed by the fact that plaintiff's long delay in filing suit had occasioned "considerable prejudice to the Government" due to the loss of medical reports and the death of key witnesses. *Sanders*, 551 F.2d at 460. Plaintiff's possession of medical records was also held to be of significance in *Waits v. United States*, 611 F.2d 550, 553 (5th Cir.1980), wherein the court declared that in a failure to treat case plaintiff's cause of action accrued when plaintiff gained access to relevant VA medical records.

A similar approach was taken in *West v. United States*, 592 F.2d 487 (8th Cir.1979). In *West* plaintiffs' claims stemmed from the negligent acts of a government physician on December 3, 1973. Plaintiffs filed suit against the United States in 1976. Plaintiffs claimed that their FTCA action did not accrue until February 20, 1975, when they first discovered the identity of the physician responsible for the negligent acts and that he was a government employee. The United States Court of Appeals for the Eighth Circuit rejected this argument, finding that plaintiffs' cause of action had accrued in 1973 when plaintiffs became aware of the grave nature of the injuries of which they complained. As stated by Judge McMillian:

In the present case appellees were immediately aware of the injury and also knew that Dr. Henjyoji was the infant's attending physician. In view of the *serious nature of the facts* a reasonable person should have been alerted at the time of injury that there may have been negligence.

*West*, 592 F.2d at 493 (emphasis added). *See also Green*, 765 F.2d at 108 (the severity of plaintiff's injuries would have caused a reasonably diligent claimant to seek advice in the medical and legal community); *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir.1985) (statute begins to run when a reasonably diligent person in the tort claimant's position reacting to any suspicious circumstances of which he might have been

aware would have discovered the government's negligence).

A number of courts have met the issue by resort to the "continuing treatment" or "continuing tort" doctrine. Under an expansive reading of that doctrine, plaintiff's cause of action does not accrue until the allegedly tortious continuing treatment comes to a halt, notwithstanding that the plaintiff may have been aware of the facts constituting negligence sometime prior to cessation of treatment. In *Page v. United States*, 729 F.2d 818 (D.C.Cir.1984), for example, the plaintiff claimed that VA physicians had negligently subjected him to harmful drug therapy during a continuous course of treatment extending from 1961 to 1980. Plaintiff filed suit in 1981. Plaintiff was concededly aware of the allegedly tortious nature of the treatment well prior to the two-year cut-off date, as evidenced by his act of filing a malpractice suit against the VA in 1972. The 1972 claim was dismissed without appeal by the district court. The United States Court of Appeals for the District of Columbia found that as to tortious conduct occurring during the period 1961–1972, plaintiff's claims were barred by principles of res judicata, but that as to claims for the period 1972 to the date of filing, plaintiff's claims were timely, in that plaintiff's cause of action did not accrue "until treatment was terminated in 1980." *Page*, 729 F.2d at 823. The court reasoned that "[s]ince ... no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,' it seems proper to regard the cumulative effect of the conduct as actionable." *Page*, 729 F.2d at 821–22, *quoting Fowkes v. Pennsylvania Railroad*, 264 F.2d 397, 399 (3d Cir.1959). The court added that "[plaintiff's] awareness since at least 1972 of his [drug] addiction and the attendant harm does not defeat application of the continuing-tort doctrine since its very purpose would be to deny VA an open-ended license to continue the drug program that assertedly caused and maintained [plaintiff's] addiction." *Page*, 729 F.2d at 823 (footnotes omitted). Accordingly, the court found that plaintiff's claim "that VA wrongfully prescribed addictive drugs without proper monitoring did not accrue for purposes of the statutory limitation on suit-filing until treatment was terminated in 1980." *Page*, 729 F.2d at 823. *See also Kossick v. United States*, 330 F.2d 933, 936 (2d Cir.1964) ("[i]t would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician").

The continuing treatment doctrine was less expansively interpreted by the Eighth Circuit in two pre-*Kubrick* cases, *Reilly v. United States*, 513 F.2d 147 (8th Cir.1975) and *Hulver v. United States*, 562 F.2d 1132 (8th Cir.1977). In *Reilly* the plaintiff received treatment at a VA hospital in November, 1968 for a severe asthma attack. Over plaintiff's objections, she was placed on a mechanical respirator by VA physicians. The respirator caused plaintiff to suffer throat soreness following her discharge from the VA hospital. Plaintiff informed her physician of her discomfort and was informed that it was a normal aftereffect of respirator treatment and would quickly heal. This representation was made on November 29, 1968. Plaintiff's throat discomfort did not cease, and in January, 1969 she was compelled to undergo a low tracheotomy to permit unrestricted breathing. Plaintiff underwent tracheal dilation treatment in April, 1969. Neither operation was sufficient to ease plaintiff's discomfort, and she was ultimately diagnosed as suffering from tracheal stenosis—an unusual amount of scar tissue about the trachea caused by the mechanical respirator. Plaintiff presented a claim to the appropriate federal agency on December 29, 1971 alleging that VA physicians had been negligent in recommending mechanical respirator treatment to her. The Eighth Circuit found that plaintiff's cause of action had accrued in January, 1969 and that, accordingly, her cause of action was untimely. The court found that plaintiff knew of the causal relationship between the mechanical respirator treatment and her injury in January, 1969, when informed by a physician that tracheal stenosis was a

rare aftereffect of mechanical respirator treatment. Once advised of the acts causing her injury, plaintiff was under duty to exercise reasonable diligence in filing suit, the court found, and plaintiff's good faith reliance on her VA physician's representations that her condition was a "normal aftereffect" did not relieve her of this duty. As stated by the *Reilly* court: "when the facts became so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations began to run against [plaintiff's] cause of action." *Reilly,* 513 F.2d at 150. The court concluded that plaintiff should have been aware of her cause of action in 1969 "despite the representations of her doctors." *Reilly,* 513 F.2d at 150.

In *Reilly,* as in this case, plaintiff placed reliance on the continuing treatment rule. The *Reilly* plaintiff continued to receive treatment from VA physicians well into the two-year period [2] prior to filing her administrative claim. The court rejected this argument, stating:

> [Plaintiff's] reliance on the continuous treatment rule is misplaced, for the rule does not apply when the claimant is aware of the acts constituting negligence. The rule: * * * [I]s premised on the notion that a person should not be required to investigate the cause of his injuries.... The interest in preventing stale claims convinces us that this rationale for the rule has no merit when a person knows of the acts constituting negligence. In this situation little, if any, investigation is necessary to determine whether a meritorious cause of action exists. * * *

*Reilly,* 513 F.2d at 150; *quoting Tyminski v. United States,* 481 F.2d 257, 265 n. 5 (3d Cir.1973).

**2.** *Reilly* also makes clear that where plaintiff has awareness of cause and injury more than two years prior to filing his cause of action, all of plaintiff's claims are untimely, including claims for the two-year period prior to filing suit. *Reilly,* 513 F.2d at 150.

**3.** Defendant argues that the "continuing treatment" doctrine has been completely eviscerated

In *Hulver* the plaintiff underwent surgical operations at a Kansas City, Missouri, VA hospital on October 17, 1968, December 12, 1968, and March 10, 1969. Plaintiff's administrative claim was filed February 22, 1971. The court found that the October 17, 1968 operation had been negligently performed, and that plaintiff had discovered, or reasonably should have discovered before February, 1969 facts sufficient to alert a reasonable person that there may have been negligence relating to the October, 1968 surgery and the injuries of which plaintiff complained. The court rejected plaintiff's reliance on the continuing treatment doctrine, stating:

> The reason for the [continuing treatment] rule ... is that one is presumed to repose confidence in the individual doctor to whom he entrusts his medical problems and that the confidential relationship excuses the making of inquiry which questions the care which has been or is being given during the existence of the relationship.
>
> We cannot accept the proposition that one who continues to receive treatment from succeeding government physicians is, regardless of the circumstances, excused from conducting diligent inquiry into the conduct of a doctor with whom a personal relationship has been terminated and who is not claimed to have acted in direct concert with the succeeding physicians.

*Hulver,* 562 F.2d at 1137, *quoting Brown v. United States,* 353 F.2d 578, 580 (9th Cir.1965). The *Hulver* court expressly found that the allegedly negligent physician's treatment of plaintiff ceased no later than December 31, 1968, and that the physician who took over the treatment after December 31, 1968 had no prior connection with the alleged negligence.[3]

by *Kubrick* and the "cause and injury" standard adopted in that case. What defendant does not recognize is that the continuing treatment doctrine is not an alternative to the cause and injury standard, but rather, a permutation of "cause and injury" uniquely suited to a failure to diagnose, warn, or treat claim. Because no affirmative acts of negligence are here alleged,

While the approaches taken by the courts have not been uniform, it is clear that whatever the verbal formulation, the focus of the courts has been upon the "reasonable diligence" of the plaintiff.[4] On the facts of this case, the Court cannot find that plaintiff was reasonably diligent in filing suit, for several reasons.

■ First, it is beyond dispute that plaintiff became aware or in the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition well prior to October, 1982. By his own admission, plaintiff knew in January, 1982 that his condition was steadily worsening and that "medical management" had failed to prevent serious deterioration of his condition.[5] Plaintiff's awareness that his initial throat and chest discomfort had deteriorated into extreme difficulty swallowing and sleeping and extreme chest pain notwithstanding twenty-plus years of medical management put plaintiff on notice that the defendant's treatment of him may have been negligent. As in *Augustine, Radatz,* and *Green,* plaintiff's failure to investigate the possibility of negligent treatment when aware that medical management had not prevented development of a pre-existing problem into a more serious condition does not evince "reasonable diligence."

■ Second, given the gravitous nature of plaintiff's ailments, plaintiff "should have been alerted" prior to October, 1982 that he may have been negligently treated. *West,* 592 F.2d at 493. In 1962 plaintiff experienced throat and chest discomfort and inability to eat or sleep. By January, 1982 plaintiff's condition had grown significantly more serious, as he stated in his deposition:

> The chest was aching, the heart was sore, the lungs were finding it hard to breathe more consistently, the stomach was sore all the time, you know, the no sleep, I looked like walking death, let me put it that way.

Wehrman Dep. at 148. Given the serious nature of these complaints, here, as in *Sanders, West,* and *Green,* plaintiff's fail-

---

resort to the continuing treatment rule, as in *Reilly, Hulver, et al.,* is appropriate to pinpoint the cognitive intersection of injury and cause, assuming that the predicate to the doctrine, a continued confidential physician-patient privilege, is present. Here, as discussed *infra,* such a relationship is not present.

4. In those cases where accrual of plaintiff's cause of action has been found not to have occurred until plaintiff learned additional facts relating to cause and legal ability, the courts have been careful to point out that the plaintiff had exercised *reasonable diligence* in investigating the possibility of legal recompense for the injuries suffered. In *United States v. LePatourel,* 593 F.2d 827 (8th Cir.1979), the Eighth Circuit, in finding that plaintiffs' FTCA claim did not accrue until "we clarified [plaintiffs'] right to recover through our construction of the Act," *LePatourel,* 593 F.2d at 830, was careful to point out that "[t]he record indicates that the [plaintiffs] did not sleep on their rights but diligently sought to recover for their injuries." *LePatourel,* 593 F.2d at 832. In *Portis v. United States,* 483 F.2d 670 (4th Cir.1973) the court in rejecting the defendant's claim that plaintiff's cause of injury had accrued when she became aware of a "distinct possibility" that the treatment afforded her by VA doctors had been negligent, noted that the plaintiff made a "diligent effort" to uncover the cause of her injuries and that her failure to uncover the causal link until six years after the injury was inflicted was mere "blameless ignorance." *Portis,* 483 F.2d at 673–75.

5. In a deposition taken July 16, 1986, plaintiff stated:

Q. Now, the last time you were in the VA Hospital was January of 1982. Did you know at that time that you weren't getting any better?

A. January, last time I was in the hospital was January 9th, 1982?

Q. At the Veterans.

A. Oh, definitely.

Q. You definitely knew in January 1982 you were not getting better?

A. Absolutely. And I'm sure I told it to them in exactly that manner. . . .

. . . .

Q. And you knew that in 1982?

A. Oh, absolutely. In fact, over the course of years if I wouldn't have known that and I was getting increasingly worse, I would never, never repeatedly have asked seven times to see—to have them do surgery on me and get this over with and done. And seven times they told me, "If we do, we'll kill you. You're in too bad a shape." The eighth time being this blond headed doctor with the blond mustache out there, the head surgeon.

Deposition of Floyd L. Wehrman at 167–68.

ure to investigate possible negligence until 1984 does not bespeak "reasonable diligence."[6]

■ Third, the record discloses that plaintiff obtained possession of his VA medical records on several occasions prior to October, 1982. On July 14, 1981 plaintiff requested release of all his VA medical records for the period 1960–1970. Plaintiff received these records July 24, 1981. On June 22, 1981 plaintiff requested release of certain of his medical records for the period 1962–1972. Plaintiff received these records June 29, 1981. *See* Exhibit B in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. Furthermore, plaintiff is no stranger to medical malpractice actions, having filed six such lawsuits prior to initiation of this matter. *See* Wehrman deposition at 24, 25. In addition, plaintiff has had a long professional association with his present legal counsel, dating to March, 1965 when an attorney in counsel's office corresponded with the VA requesting information about plaintiff's medical condition for possible use in a claim against a drug manufacturer. *See* Defendant's Exhibits A–1 through A–6.[7] Given plaintiff's possession of his VA medical records, his familiarity with medical malpractice litigation, and his longstanding association with counsel, here, as in *Sanders* and *Waits*, the Court is constrained to find that plaintiff "failed in [his] obligation to exercise reasonable diligence in determining the facts giving rise to [his] injury." *Sanders*, 551 F.2d at 460.

Fourth, as in *Sanders*, plaintiff's long delay in filing suit might well occasion "considerable prejudice to the Government" in that evidence dating to 1962 has undoubtedly grown stale. *See Sanders*, 551 F.2d at 460.

■ Fifth, even under the expansive interpretation of the continuing treatment doctrine adopted in *Page* and *Kossick*, it is clear that the doctrine has no application to plaintiff in the circumstances of this case. As stated in *Page*, "application of the continuous-treatment doctrine requires 'the continued existence of the personal, confidential physician-patient relationship.'" *Page*, 729 F.2d at 823 n. 36, *quoting Ciccarone v. United States*, 486 F.2d 253, 257 (3d Cir.1973). Accordingly, treatment from succeeding government physicians does not interrupt the running of the limitations period when the personal relationship with the physician charged with malpractice has ended and that physician is not claimed to

---

**6.** The seriousness of plaintiff's condition is illustrated by a VA medical record dated June 8, 1962:

> This 37 year old block-layer was admitted with the chief complaint of "blackouts" which have been occurring intermittently, according to the patient, since 1943. One month prior to the first blackout spell in 1943 he fell on a concrete runway at Corpus Christi, Texas and was unconscious for several minutes.... .... Although each spell is different often during the spell he gets sensation that everything is going faster than it should-including time; A sensation of anxiety is followed by feelings that his "brain is getting hot and thick" and this is followed by loss of control of bodily movements.... .... He is an extremely anxious person who is extremely afraid of needles among other things. It became increasingly obvious during his hospitalization that he was extremely hostile. This was evident on many occasions. When recovering from general anesthesia the patient repeated over and over "I'll kill everybody"....

> .... He has made frequent threats to kill Judge Victor Hanson and also to kill several of the Veterans Hospital staff members. He is considered potentially dangerous.

Defendant's Exh. D.

**7.** For example, in a letter to the VA dated January 11, 1967, plaintiff authorized release of his records to present counsel in the following terms:

> I hereby authorize the Veterans Administration to disclose information from my claims file and medical records to the extent permitted by its Regulations to my attorney ... or an attorney of his firm designated by him.

Defendant's Exh. A–2. Plaintiff's counsel obtained copies of plaintiff's VA medical records in August, 1965, February, 1967, February, 1970, and August, 1980. The VA provided copies of plaintiff's medical records to plaintiff's private physicians at plaintiff's request in December, 1960, November, 1962, October, 1963, December, 1983, and February, 1984.

have acted in direct concert with plaintiff's succeeding physicians. *Hulver*, 562 F.2d at 1137; *Page*, 729 F.2d at 823 n. 36; *Brown*, 353 F.2d at 580; *Camire v. United States*, 535 F.2d 749, 750 (2d Cir.1976).[8] Here, plaintiff was seen by many different VA physicians over a twenty-two year period. Plaintiff is simply unable to point to a continued physician-patient privilege on which he relied in failing to make diligent investigation. Nor has plaintiff made any claim in his pleadings, papers, or arguments that VA physicians acted in concert with one another for the purpose of perpetuating their alleged negligence over this extended period. Absent a continued personal and confidential physician-patient relationship, plaintiff's reliance on the continuing treatment doctrine is simply misplaced. *See Hulver*, 562 F.2d at 1137 (plaintiff's cause of action accrued when his relationship with the allegedly negligent government physician ceased); *Mortenson v. United States*, 509 F.Supp. 23 (S.D.N.Y.1980) (plaintiff unable to rely on the continuing treatment doctrine where he did not maintain a physician-patient privilege with the government physician); *Ciccarone*, 350 F.Supp. at 563 (the continuous care rule is limited to the personal physi-

cian-patient relationship and a patient is not excused from diligent inquiry because he continued to be treated by succeeding government doctors).

■ Given plaintiff's longstanding awareness of the serious and grave nature of his physical condition and that his condition had steadily declined, and given plaintiff's possession of his VA medical records, his familiarity with medical malpractice litigation, his longstanding association with present counsel, and the absence of a continued personal and confidential physician-patient privilege on which plaintiff might justifiably have relied in delaying suit, the Court is unable to find that plaintiff exercised reasonable diligence in investigating his legal remedies. Accordingly, defendant's motion for summary judgment will be granted.

The result reached by application of the above factors in this case may seem harsh. If congressionally enacted statutes of repose are to attain their salutary purpose of eliminating stale claims and encouraging prompt resort to established mechanisms of legal redress, however, those statutes must be fairly and fully enforced.[9] It has been stated that the "test for applicability

8. In *Tyminski v. United States*, 481 F.2d 257 (3d Cir.1973) the Third Circuit advanced a rationale for the continuing treatment doctrine at odds with the rationale advanced in *Hulver, Reilly,* and *Page.* The *Tyminski* court reasoned that "the rule is premised on the notion that a person should not be required to investigate the cause of his injuries or to bring suit while receiving necessary treatment for the injuries. The court added: "[t]he interest in preventing stale claims convinces us that this rationale for the rule has no merit when a person knows of the acts constituting negligence." *Tyminski,* 481 F.2d at 264–65 n. 5. Here, plaintiff knew of the acts constituting negligence—defendant's failure to diagnose, warn, or treat—well prior to October, 1982. In *Ashley v. United States,* 413 F.2d 490 (9th Cir.1969) the court viewed the rule as applicable only where physicians conspire to conceal their negligence from the patient. Given the many occasions on which plaintiff and plaintiff's counsel were given free access to plaintiff's VA records in this case, concealment by plaintiff's VA physicians is not a sustainable claim.

9. In *Kubrick* the Supreme Court set forth the policy considerations underscoring the section 2401(b) limitations period:

Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter,* 101 U.S. 135, 139, 11 Otto 135, 139, 25 L.Ed. 807 (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *Kubrick,* 100 S.Ct. at 356–57.

of the [cause and injury] rule includes a *heavy burden* of inquiry upon the party seeking to invoke it." *Lowe v. Johns-Manville Corp.*, 604 F.Supp. 1123, 1127 (E.D. Pa.1985) (emphasis added) (construing Pennsylvania state law cause and injury rule to tort claims accrual). In *Kubrick* the Supreme Court stated:

> Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. We should regard the plea of limitations as a "meritorious defense, in itself serving a public interest."
>
> We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.

*Kubrick,* 100 S.Ct. at 357 (citation omitted). The Court does not intend by its ruling to confer upon the defendant an "open-ended license" to perpetuate an allegedly negligent continuing course of treatment. Nevertheless, given plaintiff's longstanding awareness of injury and cause, and with the public interest in fair enforcement of congressionally enacted limitations periods in view, the Court is constrained to find plaintiff's cause of action is untimely.

Accordingly,[10] based on the foregoing, and upon review of all the files, records, and proceedings herein,

IT IS ORDERED that defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

10. In the alternative, defendant argues that plaintiff's claims must be dismissed due to plaintiff's failure to reveal his medical expert. In a medical malpractice action plaintiff's failure to produce a medical expert at trial is a permissible basis upon which to dismiss the suit. *Adams v. Nystrom,* 373 N.W.2d 666 (Minn. Ct.App.1985). Here, following a lengthy delay, plaintiff produced the identity of his medical expert. Accordingly, defendants' second ground for dismissal has become moot.