Betty Jean BROWN, a minor, by Owen Walter Brown, her guardian ad litem, and Owen Walter Brown, Appellants,

v.

UNITED STATES of America, Appellee.

No. 19446.

United States Court of Appeals Ninth Circuit.

Nov. 16, 1965.

Maurice V. Boudreau, Schall, Nielsen, Boudreau & Price, San Diego, Cal., for appellants.

Manuel L. Real, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief, Civil Sec., Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, JERTBERG and ELY, Circuit Judges.

ELY, Circuit Judge:

This is an appeal from a judgment in favor of the defendant below, the United States of America. By stipulation of the parties the sole issue in a separate trial was whether the appellants' claims under the Federal Tort Claims Act, 28 U.S.C. § 1346, were barred by the two-year limitations period specified for such actions in 28 U.S.C. § 2401(b). The District Court held that the action was barred. We agree.

Betty Jean Brown, a minor, was born prematurely on February 21, 1955, in the United States Naval Hospital at Corpus Christi, Texas. Weighing only one pound ten ounces at birth, the infant was placed in an incubator, and oxygen was administered to save her life. The life-saving oxygen was heavily administered, and when Betty was released from the hospital on May 5, 1955, her parents were told that her vision would be impaired because of its use. In 1956 Betty was taken by her parents to the United States Naval Hospital at Bethesda, Maryland, where the parents were told that Betty was totally blind, suffering from retro-lental fibroplasia, and that in all likelihood, the affliction was permanent. They were also told that the blindness was due to the use of oxygen after her birth.

Betty's father, appearing in this case as his child's guardian ad litem and also for himself individually, has been in the Navy since 1946. Both parents testified that they had never consulted a private physician for the child's treatment, that at all times she had been attended by naval doctors, and that at no time were they told that there was negligent treatment. It was not until 1962, when the parents were consulting an attorney regarding an insurance claim involving Betty's blindness, that they learned that a claim against the Government might possibly lie. The action was filed on June 14, 1963, approximately seven years and four months after the alleged negligence occurred.

In medical malpractice actions brought under the Federal Tort Claims Act, the claim "accrues against the Government when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice." Hungerford v. United States, 307 F.2d 99, 102 (9th Cir. 1962); Quinton v. United States, 304 F.2d 234 (5th Cir. 1962). It is well established that minority does not toll the limitations period prescribed in the Federal Tort Claims Act. Pittman v. United States, 341 F.2d 739 (9th Cir. 1965); United States v. Glenn, 231 F.2d 884 (9th Cir.), cert. denied, 352 U.S. 926, 77 S.Ct. 223, 1 L.Ed.2d 161 (1956). Implicit in the Pittman decision is that the parents or guardians of a minor must preserve the minor's claim by timely action. As Chief Judge Chambers put it in Pittman, "We would be blind if we didn't know that when there is money around just about all of the claims will get to court through guardians ad litem.

* * * [O]ne can see that Congress was alarmed about stale claims when it passed the Act. * * * We do not believe that Congress could have intended that infants have up to 21 years for a statute of limitations." Pittman v. United States, supra, 341 F.2d at 741.

■ Appellants, confronted with the existing state of the law, are left only with their contentions that they were entitled to place trust and confidence in government doctors and thus were not required to investigate or become suspicious until a full and complete disclosure of the medical treatment was made, that the Government is estopped from taking advantage of its own wrong in misrepresenting and concealing material facts which prevented appellants from instituting suit at an earlier date, and that the statute of limitations does not run against a claimant so long as the physician-patient relationship continues.

As to the first and second of these contentions, it is true, as emphasized by appellants, that no government physician stated that there had been negligent treatment of the child. It is clear, however, that the parents, not later than 1956, were informed as to the exact nature of the disability and its relationship to prior medical treatment. Thus, the trial court properly concluded that to the parents there came knowledge of facts sufficient to alert a reasonable person that there may have been negligence related to the grievance for which the complaint was subsequently made. The tragedy itself, unusual and unexpected, would ordinarily be expected to have alerted the parents to take steps to ascertain whether rights had accrued and if so, to protect those rights. Here, however, the trial court had more to substantiate its conclusion, including the mother's testimony that on May 31, 1960, more than three years prior to the filing of the action, in an application for Betty's admittance to a school for handicapped children, she had stated that the cause of Betty's blindness was "*excessive oxygen*." (Emphasis added.) "Excessive" means "too much", and "too much" to a reasonable person means that some one may have made a mistake. As the trial court stated, "The simple inquiry could have been, 'Was the use of excessive oxygen necessary?'" The trial court's determination that, under the facts, the parents were obliged to investigate as to possible negligence must be upheld. Again quoting the district judge, "To expect a doctor, voluntarily, absent an inquiry and absent special situations not existent here, to affirmatively advise a patient that he has been negligently treated, is unrealistic, and no cases have ever so held."

■ Finally, we deal with appellants' contention that the statute of limitations does not run against the claimant so long as the physician-patient relationship continued. Assuming such a rule to be properly applicable to a claim under the Federal Tort Claims Act, it has no place in the framework of the case at bar. The oxygen was administered by doctors in the naval hospital at Corpus Christi. When the child's treatment by those particular doctors terminated, the personal physician-patient relationship also came to an end. The parents then took the child to Bethesda Naval Hospital where different physicians informed them forthrightly and more precisely as to the child's condition and the cause. The reason for the rule which appellants advance is that one is presumed to repose confidence in the individual doctor to whom he entrusts his medical problems and that the confidential relationship excuses the making of inquiry which questions the care which has been or is being given during the existence of the relationship.

We cannot accept the proposition that one who continues to receive treatment from succeeding government physicians is, regardless of the circumstances, excused from conducting diligent inquiry into the conduct of a doctor with whom the personal relationship has been terminated and who is not claimed to have acted in direct concert with the succeeding physicians.

Affirmed.