**Mark Maio FERNANDEZ, an incompetent, by his Guardian Ad Litem, August Fernandez, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 80–4395.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 22, 1982.

Decided March 29, 1982.

L. Richard Fried, Jr., Honolulu, Hawaii, for plaintiff-appellant.

Donald E. Jose, Dept. of Justice, Washington, D. C., for defendant-appellee.

Appeal from the United States District Court for the District of Hawaii.

Before DUNIWAY, WRIGHT and POOLE, Circuit Judges.

DUNIWAY, Circuit Judge:

The members of the panel are unanimously of the opinion that the decisional process would not be significantly aided by oral argument in this case and the case is therefore submitted without oral argument.

Mark Fernandez, by his guardian ad litem, appeals from a judgment dismissing his action against the United States under the Federal Tort Claims Act. We affirm.

### I. Facts.

We take the facts from the trial judge's Findings of Fact, which are not clearly erroneous.

Mark and his twin brother Wayne were born approximately six weeks prematurely at Tripler Army Medical Center in Hawaii on March 14, 1958. Mark weighed 2 pounds 4½ ounces; Wayne weighed 4 pounds 9 ounces. The court found:

On the third day of his life, March 16, 1958, Mark's blood was tested for bilirubin after the nurses noticed he was jaundiced (yellow). A microbilirubim test yielded results of 25.5mg%. At this point the decision was made to give Mark a complete blood transfusion. To obtain his blood type, check for possible Rh problems, and recheck the accuracy of the prior test, a larger amount of blood was drawn and sent to the laboratory for analysis. The results were: 32.6mg% bilirubin, Coombs test negative, and blood group B+. When the proper blood had been obtained and a transfusion team assembled Mark was given a total blood transfusion. A portion of the first blood withdrawn from his body was sent to the lab for analysis and later revealed a bilirubin level of 33.8mg%. After the transfusion Mark's blood was again tested and was found to have a bilirubin level of 13.4mg%. The next day, March 17, 1958, Mark was noticed to still be quite jaundiced. A blood test revealed a bilirubin level of 17.6mg% in Mark's blood. By 3:30 that afternoon Mark's bilirubin had reached 20mg% and another transfusion was scheduled. This first blood withdrawn was again sent to the laboratory and revealed that Mark's bilirubin had fallen to 15mg% prior to the second exchange transfusion. After that transfusion, his blood bilirubin was found to be 6.8mg%. The next day, March 18, 1958, Mark's bilirubin had increased to 18mg% but subsequently it stabilized at normal levels so no further blood transfusions were performed on Mark.

Mark left Tripler Hospital on May 24, 1958, and his final visit to that hospital was on June 30, 1958. On that day, a copy of his discharge summary was given to his mother, and she later delivered it to Mark's doctors at Kaiser Foundation Hospital in Honolulu. That summary stated all of the foregoing facts of Mark's treatment. Thus those facts were available to Mark's parents and to his doctors at Kaiser no later than 1958.

Wayne also developed jaundice shortly after birth. However, Wayne developed normally. Mark did not. He developed deafness, a reduced I.Q., and spasticity in his lower legs. These facts developed within 2½ years, and, of course, were known to his parents.

In October 1964, Mark's mother, in filling out an application for Mark's admission to a school, stated that Mark was not born deaf, but that his deafness was caused by "yellow jaundice at three days old," and first appeared when he was 2½ years old.

This action was begun by the filing of an administrative claim on November 22, 1976. The Act, 28 U.S.C. § 2401(b), requires that the administrative claim be filed "within two years after such claim accrues." *See also* 28 U.S.C. § 2675(a). The failure to file within the time specified is a jurisdictional defect in plaintiff's case. *Caton v. United States*, 9 Cir., 1974, 495 F.2d 635, 637.

Mark's claim of malpractice is that his yellow jaundice was discovered too late, the bilirubin test was administered too late, and the transfusion was administered too late. The court concluded that Mark's parents knew of the nexus between his deficiencies and his jaundice at least as early as 1964. We agree.

> It is well established that minority does not toll the limitations period prescribed in the Federal Tort Claims Act.... Implicit in the *Pittman* [*v. United States*, 341 F.2d 739 (9th Cir. 1965)] decision is that the parents or guardians of a minor must preserve the minor's claim by timely action. (citations omitted) (*Brown v. United States*, 9 Cir., 1965, 353 F.2d 578, 579)

■ The key case here is *United States v. Kubrick*, 1979, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259. The essence of the decision in that case, by which we are bound is this: When the plaintiff (or, here, Mark's parents) "became aware of his injury and its probable cause," *United States v. Kubrick*, 1979, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259, the two year period started to run, that is, the claim accrued.

■ In *Kubrick*, the plaintiff was "aware of his injury and its probable cause" (444 U.S. at 118, 100 S.Ct. at 357) more than two years before a claim was filed. Here, Mark (through his parents) was aware of his injury and its probable cause. They not only knew of the injury, and that it was caused by the jaundice, they also knew, or would have known if they had read the discharge summary, or asked the Kaiser doctors about it, that the jaundice (the "cause") had been treated, and exactly when and how it had been treated. If they had inquired, and if there were merit in the case, presumably they would have learned that there was a possibility that the diagnosis and treatment came too late, and that earlier diagnosis and treatment would (or might) have prevented the sad after-effects of the jaundice. It is this possibility which is the sole ground upon which Mark claims that there was malpractice.

In *Kubrick*, the Court said:

> We are unconvinced that for statute of limitation purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff. (444 U.S. 122, 100 S.Ct. 359)

Here, Mark's parents knew, or had available the means of knowing, all there was to know about the cause of his injuries, and who (the nurses and the doctors who diagnosed and treated his jaundice) were responsible. As in *Kubrick* :

The difficulty is that it does not appear that Kubrick ever made any inquiry, although meanwhile he had consulted several specialists about his loss of hearing and had been in possession of all the facts about the cause of his injury since January 1969. Furthermore, there is no reason to doubt that Dr. Soma, who in 1971 volunteered his opinion that Kubrick's treatment had been improper, would have had the same opinion had the plaintiff sought his judgment in 1969.

We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. (444 U.S. 123, 100 S.Ct. 360)

No such advice was ever sought for twelve years. *See also Davis v. United States*, 9 Cir., 1981, 642 F.2d 328, 330–331. Here, as in *Kubrick* and *Davis*, we decline to defer accrual of the claim until fault, as distinguished from injury and cause, is determined.

Affirmed.