Cara Lyn LANDRETH, a minor, By and Through her Guardian Ad Litem, Joseph Y. ORE, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 86–5732.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1988.

Decided June 23, 1988.

H.G. Robert Fong, Ku & Fong, Los Angeles, Cal., for plaintiff-appellant.

Shari Silver, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before FARRIS and REINHARDT, Circuit Judges, and McKIBBEN,[*] District Judge.

McKIBBEN, District Judge:

Plaintiff, Cara Lyn Landreth, by her guardian ad litem, appeals from a judgment dismissing her action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq. We affirm.

---

[*] Honorable Howard D. McKibben, United States District Judge, District of Nevada, sitting by designation.

## I. FACTS AND PROCEDURAL POSTURE

During the morning of March 30, 1973 Cara Lyn Landreth, who was then eleven months old, swallowed a portion of her mother's quibron medication. Her mother, Jennie Landreth, and her father, William Terry Landreth, who was a member of the United States Air Force rushed her to the Plattsburgh Air Force Base Hospital. No physician examined Cara at the emergency room. Jennie Landreth heard a physician instruct an orderly to give Cara 15 cc. of ipecac and then send her home. The ipecac was administered and the Landreths returned home. That evening Jennie noticed Cara's eyes had rolled back and she was convulsing. Cara was immediately taken back to the Plattsburgh hospital by her parents. She was then transferred to the Montreal Children's Hospital where she remained hospitalized for six days. The medical personnel at the Montreal hospital told the Landreths that Cara's seizures were due to the quibron ingestion and that her stomach should have been pumped at the Plattsburgh hospital when she was first taken there.

When Cara was fifteen months old, Jennie noticed she was easily angered and had temper tantrums. At eighteen months Jennie noticed Cara's communication skills were retarded. A base doctor in the Philippines where William was stationed recommended that Cara be examined by a specialist.

In 1977 or 1978, Jennie took Cara to the UCLA Neuropsychiatric Institute where a doctor performed a brain scan on Cara and determined she had suffered brain damage as a result of the ingestion of quibron.

Prior to 1979 both William and Jennie Landreth frequently discussed their belief that the Air Force was responsible for Cara's problems because the doctors failed to pump Cara's stomach on the morning she consumed the quibron.

During 1979 Jennie told a doctor at the UCLA Neuropsychiatric ward that Cara's problems were partially attributable to her ingestion of quibron.

Plaintiff filed an administrative claim dated September 6, 1983 under the FTCA alleging the Air Force was negligent. The Air Force rejected the claim on May 15, 1984, finding the claim was time barred.

On November 7, 1984 a guardian ad litem was appointed for Cara and suit was filed in district court. The United States filed a motion to dismiss and for summary judgment. The district judge trifurcated the statute of limitation issue from the issues of liability and damages. After argument, the district court held the suit was barred by the two-year statute of limitations under the FTCA, 28 U.S.C. § 2401(b) and dismissed the action.

Cara Landreth appeals, contending that (1) her parents did not know or have reason to know of the existence of facts establishing the government's responsibility for her condition until a period within two years of the filing of her claim, or (2) the statute was tolled until a guardian ad litem, without a conflict of interest, was appointed to represent her.

## II. DISCUSSION

Under 28 U.S.C. § 2401(b), a tort claim against the United States must first be presented to the appropriate federal agency within two years after the claim accrues before a negligence suit may be instituted. Failure to do so is a jurisdictional defect. *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). The date on which a claim accrues is determined by federal law. *Washington v. United States,* 769 F.2d 1436, 1438 (9th Cir.1985). In a medical malpractice case under the FTCA, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause. *See United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Colleen v. United States,* 843 F.2d 329, 331 (9th Cir. 1988); *Davis v. United States,* 642 F.2d 328, 331 (9th Cir.1981). Plaintiff need not be aware that an actionable claim exists as long as she is aware of the injury and its probable cause. *United States v. Kubrick, supra.*

The district court's grant of summary judgment is reviewed de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Review is governed by the same standard used by the district court under Fed.R.Civ. P. 56(c). *Id.* We must determine, viewing the evidence most favorable to plaintiff, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

▆ Here any knowledge Cara's parents had of Cara's injuries and the cause of her injuries is imputed to her. *Fernandez v. United States*, 673 F.2d 269, 271 (9th Cir. 1982). The fact of minority does not toll the statute. *Brown v. United States*, 353 F.2d 578, 579 (9th Cir.1965). Rather, the minor's parents have a legal duty to take action on the child's behalf. *Washington v. United States*, 769 F.2d at 1439. The date the Landreths first discovered the existence and cause of Cara's injuries is a question of fact reviewed under the clearly erroneous standard. *Colleen v. United States*, at 331. The date the Landreths should have discovered the existence and cause of Cara's injuries in the exercise of reasonable diligence is a mixed question of fact and law and is also reviewed under the clearly erroneous standard. *Id.*

▆ The district court found Cara's parents knew or should have known of their daughter's injury and its cause no later than 1979. The record supports this finding. Jennie Landreth informed Dr. Lillian Lessor at UCLA Neuropsychiatric Ward in 1979 that Cara had ingested quibron at the age of eleven months. Jennie also told Dr. Lessor she believed Cara's behavioral problems were related to that incident. William Landreth testified that prior to 1979, he and Jennie discussed the failure of the physicians at Plattsburgh Air Force Base Hospital to have Cara's stomach pumped. Dr. Gabriel of Century City, California performed a brain scan on Cara before 1979, and his diagnosis was that the quibron ingestion was a cause of her brain damage. Therefore the court concludes the district court's finding that Cara Landreth,

through her parents, was aware of the cause of her injuries and the responsibility of the medical personnel at the Plattsburgh Air Force Base Hospital for those injuries no later than 1979 was not clearly erroneous. We therefore affirm the district court's ruling that Cara's claim was not timely filed under the FTCA.

▆ Nevertheless appellant argues that Jennie Landreth may have been partially responsible for Cara's injuries because she did not place her quibron medication in a secure area. Therefore, appellant maintains both Jennie and William Landreth had a conflict of interest in pursuing this claim. Appellant contends the statute of limitations for filing the FTCA claim was tolled until a guardian without a conflict of interest was appointed for Cara. To hold otherwise appellant suggests would constitute a denial of due process and equal protection of the law.

Appellant relies on *Washington v. United States*, 769 F.2d 1436 (9th Cir.1985). That reliance is misplaced. In *Washington* an adult woman became comatose as a result of the alleged negligence of Air Force physicians. Eight months after her death her husband filed a FTCA claim. The court held that Washington's claim did not accrue until her death because she was an adult and no one, including her husband, had a legal duty to bring an action on her behalf. *Washington*, 769 F.2d at 1439. Here Cara's parents had a clear duty to preserve their child's claim by timely action as the *Washington* court observed when it distinguished *Brown v. United States*, 353 F.2d 578 (9th Cir.1965) and *Fernandez v. United States*, 673 F.2d 269 (9th Cir.1982) where the parents had a duty to commence legal action on their children's behalf because they were minors. *Washington*, 769 F.2d at 1439.

Nor can this court accept appellant's contention that the alleged conflict with her mother denied her due process and equal protection of the laws. A similar argument was considered and rejected by this court. In *Pittman v. United States*, 341 F.2d 739 (9th Cir.1965) a father commenced an untimely FTCA action on behalf of his minor

child alleging the Navy negligently injured his son. The father alleged he waited to file the action because he feared that bringing such an action would jeopardize his naval career. The son argued this conflict should extend the limitations period. The *Pittman* court, in considering and rejecting this argument, said:

> Appellant also bears down heavily on the father's earlier supposed conflict of interest which may have led him to subordinate and thus pass over the interest of the son. Again, on this argument we think the congressional intent is that the Congress just did not want stale claims lying around under the Federal Tort Claims Act.

341 F.2d at 741–42. The *Pittman* court also rejected the due process and equal protection claim, stating:

> Plaintiff contends that roughly 40 percent of the nation's population is under the disability of minority and that to deprive them of rights (because of the possibility that no adult will initiate proceedings) violates due process and equal protection when adults can go vindicate their own rights. We find no cases supporting such a proposition.

341 F.2d at 741.

The FTCA is a limited waiver of sovereign immunity. The purpose of the two-year limitation provision of Section 2401(b) is to encourage the expeditious disposition of claims. As the Supreme Court stated in *United States v. Kubrick:*

> These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or

otherwise. 444 U.S. at 117, 100 S.Ct. at 357 (citations omitted).

Here more than ten years elapsed between the alleged negligent acts of the government and the filing of the administrative claim. It is precisely this type of delay the limitation provision of the FTCA was designed to guard against. While the court is not unsympathetic to Cara's condition, principles of equity cannot be invoked to toll the accrual date of plaintiff's injury for statute of limitations purposes. *Washington v. United States,* 769 F.2d at 1439; *Burns v. United States,* 764 F.2d 722, 724 (9th Cir.1985). Congress has clearly manifested its intent that there must be prompt disposition of FTCA claims. This court does not, as the *Pittman* court did not, find the plaintiff's claims to be of constitutional proportion. Therefore it should be left to the Congress and not this court to provide for the tolling of the statute if policy considerations suggest that it should do so.

For the reasons set out above the court concludes that this action is barred under 28 U.S.C. § 2401(b).

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I dissent because I believe the majority has erred in its treatment of appellant's constitutional claims.

The quibron that caused Cara's brain damage and resultant seizures and behavioral problems was prescribed for the treatment of her mother's asthma. On the morning of March 30, 1973, when Cara swallowed the quibron, Jennie Landreth had left her unsupervised and had also left the quibron within her reach. Under New York law,[1] Cara could have had an action for negligence against her mother. *See Gelbman v. Gelbman,* 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529 (1961) (eliminating defense of intrafamilial immunity for nonwillful torts).[2] Moreover, in any

---

**1.** Since the Landreths were residents of New York at the time of Cara's injury, the allegedly negligent acts occurred in New York, and the medical personnel practiced in New York, New York law governs this case. *Washington v.*

*United States,* 769 F.2d 1436, 1438 (9th Cir. 1985).

**2.** New York does not recognize a cause of action for negligent parental supervision. *Holodook v. Spencer,* 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.

malpractice action brought on Cara's behalf, Jennie could have been subject to a counterclaim or to indemnification. *See Goedkoop v. Ward Pavement Corp.*, 51 A.D.2d 542, 378 N.Y.S.2d 417 (1976) (action for injuries sustained by infant as result of blasting cap explosion; court allowed counterclaim against infant's father for indemnification, alleging father negligently maintained blasting caps in basement).

Appellant argues that her parents had a conflict of interest because of their own potential liability and that, as a result, the statute of limitations on her FTCA claim could not begin to run until a neutral guardian ad litem was appointed for her. She contends that to let the statute run while the power to assert her claim lay solely with her parents deprives her of her due process and equal protection rights. These are important constitutional claims; yet the majority disposes of them unnecessarily and without meaningful consideration.

The majority relies exclusively on our holding in *Pittman v. United States*, 341 F.2d 739 (9th Cir.1965). *Pittman* involved an accident which occurred on a Navy installation. The victim, nine-year-old Mark, argued on constitutional grounds that minority should toll the FTCA statute of limitations; we rejected that argument. *Id.* at 741. Mark further argued that his father, a Navy lieutenant commander, had a conflict of interest "because he feared litigation involving his own branch of the service might prejudice his advancement," and that he therefore delayed filing the action on Mark's behalf. *Id.* We disposed of that argument in two sentences, noting simply that "Congress just did not want stale [FTCA] claims lying around." *Id.* at 741–42.

There is no indication in *Pittman* that Mark's conflict of interest argument was based on constitutional grounds, or that we rejected it on those grounds. For that reason alone, the majority errs in relying

on that case. But even if we read *Pittman* as a constitutional holding on the conflict of interest question, it would be distinguishable. Mark's father allegedly delayed bringing suit because he feared prejudice to his naval career. There is a difference, however, between speculation about possible damage to career goals and direct financial liability. The former may be a practical reason for avoiding litigation, but not all practical concerns rise to the level of a conflict of interest. When the possibility of harm is as remote and tenuous as it was in the case of Mark's father, it is not sufficiently serious to constitute a conflict— and, thus, to overcome the policy favoring prompt disposition of FTCA claims. Here, by contrast, Cara's mother faced the prospect of direct financial liability were she to file a claim on Cara's behalf. Thus the difficult constitutional issues Cara raises cannot be considered settled by *Pittman.*

The existence of a direct conflict of interest on her mother's part may, as a matter of law, have precluded Cara from having a fair opportunity—the opportunity an adult in her circumstances would have—to file an action against the allegedly negligent medical personnel who treated her. Thus, Cara may have been deprived of her due process and equal protection rights. However, we need not, and should not, resolve these constitutional issues here. The Supreme Court has directed us to avoid deciding such questions before it is necessary to do so. *Kolender v. Lawson*, 461 U.S. 352, 361, 103 S.Ct. 1855, 1860, 75 L.Ed.2d 903 n. 10 (1983); *Mills v. Rogers*, 457 U.S. 291, 305, 102 S.Ct. 2442, 2451, 73 L.Ed.2d 16 (1982). In this case, there remain factual and legal questions, the answers to which may make it unnecessary for us to decide Cara's conflict of interest claim. Specifically, the government argues that even if Jennie was potentially liable for Cara's injury, Cara's father Terry Landreth was not, and that he could have brought the action on Cara's behalf. We cannot judge the validity of this argument without know-

S.2d 859 (1974). However, an action against Cara's mother alleging that she negligently left the medication within Cara's reach would have been allowed. *See Goedkoop v. Ward Pavement*

*Corp.*, 51 A.D.2d 542, 378 N.Y.S.2d 417 (1976) (allowing action against injured infant's father for negligently maintaining explosives).

ing whether, under New York law, Terry was financially liable for Jennie's negligence; when Terry and Jennie were divorced; and whether Terry had the authority to file an action on behalf of Cara subsequent to the divorce. The majority proceeds to reject Cara's constitutional claims without waiting for this information. Because it may be that Cara's claims can be disposed of on narrower grounds, the majority's decision violates an established tenet of judicial review. Cara's action should be remanded to allow the district court to make the factual and legal determinations that would have permitted a resolution of the government's non-constitutional argument.

Cara suffers from permanent brain damage which may be traceable to one or both of two causes: her mother's negligence and the negligence of the Air Force medical personnel who treated her. Despite the potential liability of her parents, the majority relies on them to vindicate Cara's claim and, in effect, holds Cara responsible for their failure to do so. As a consequence, Cara may be deprived of her due process and equal protection right—a result that cannot be justified by invoking Congress' desire to resolve FTCA claims promptly. The majority not only decides Cara's constitutional claims prematurely; it also brushes over the fundamental constitutional questions by relying on a case in which no cognizable conflict of interest existed, and a holding that was not based on constitutional grounds. I would remand Cara's action for resolution of the factual and legal issues described above. I therefore respectfully dissent.