**William ST. JOHN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 98–6140–CIV.**

United States District Court, S.D. Florida.

June 24, 1999.

William St. John, c/o Virginia Molloy, Deerfield Beach, FL, plaintiff pro se.

Barbara L. Petras, Asst. U.S. Atty., Fort Lauderdale, FL, for defendant.

### FINAL SUMMARY JUDGMENT

ZLOCH, District Judge.

THIS MATTER is before the Court upon the Defendant, United States of America's Motion To Dismiss Or, Alternatively, Motion For Summary Judgment (DE 55), which this Court construes as a Motion For Summary Judgment. The Court has carefully considered the merits of said Motion and is otherwise fully advised in the premises.

The *pro se* Plaintiff, William St. John, a former serviceman in the United States Navy, commenced the instant action by filing a Complaint (DE 1) on February 6, 1998, seeking damages for alleged medical malpractice pursuant to the Federal Torts Claim Act (hereinafter "FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* On February 10, 1998, the Plaintiff filed a notice of claim (Standard Form 95), with the Department of Veterans Affairs, which was denied as untimely pursuant to 28 U.S.C. § 2401 on October 7, 1998. On April 28, 1998, the Plaintiff filed an Amended Complaint (DE 14) wherein he re-asserted the allegations of his previously filed Complaint. By Or-

der (DE 23) dated June 6, 1998, the Court dismissed the above-styled cause pursuant to 28 U.S.C. § 2675 because the Plaintiff had prematurely filed an action in district court. By Order (DE 37) dated September 9, 1998, the Court reopened the above-styled cause and granted the Plaintiff leave to file a Second Amended Complaint. On November 12, 1998, the Plaintiff filed a Third Amended Complaint (DE 43).

■■■ At the outset, the Court notes that a *pro se* Plaintiff is generally held to a more liberal standard of pleading under the Federal Rules.[1] The Court has a duty to "liberally construe [a *pro se* litigant's] assertions...." *Sanders v. United States,* 113 F.3d 184, 187 (11th Cir.1997); *Fernandez v. United States,* 941 F.2d 1488, 1491 (11th Cir.1991). Nevertheless, even *pro se* litigants must meet certain minimal standards of pleading. *Holsey v. Collins,* 90 F.R.D. 122 (D.C.Md.1981). The Court is not required to abrogate the basic pleading essentials or conjure up unplead allegations simply because the Plaintiff is proceeding *pro se. Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983). The Court also notes that, for *pro se* plaintiffs, "when deciding a motion for summary judgment, it is no legitimate function of the court to assume the existence of a genuine issue of material fact when in truth none exists." *Lockhart v. Hoenstine,* 411 F.2d 455, 459 (3rd Cir. 1969).

### BACKGROUND

On May 21, 1984, Dr. Steinhagan, a doctor at the Bronx Medical Veteran's Administration Hospital, performed surgery on the Plaintiff to remove a cancerous portion of the Plaintiff's colon. During that surgery, both of the Plaintiff's ureters, which carry urine from the kidney to the bladder, were cut. Dr. Ciaverra, a urologist, imme-

---

1. The Court notes, however, that the Plaintiff graduated from St. Johns Law School, and worked at a law firm.

diately was consulted, and he retracted the ureters to the Plaintiff's bladder. The Court notes that, at the Plaintiff's deposition, he limited his claim to the damage to his left ureter that occurred during the May 21, 1984 surgery (St. John Depo. at p. 108).

Following the May 21, 1984 surgery, the Plaintiff had urinary retention. On June 7, 1984, the Plaintiff signed consent forms and underwent temporary corrective surgery. A tube was place in the Plaintiff's kidney so that urine could be diverted into an external bag until the Plaintiff could undergo surgery to repair his left ureter. On June 21, 1984, the Plaintiff was released from the hospital. The Plaintiff has admitted, under oath, that around the time of his release, Dr. Steinhagen told the Plaintiff that he had damaged the Plaintiff's "bladder" during surgery (DE 54 at p. 3 ¶ 3).

On September 13, 1984, the Plaintiff was admitted to the Bronx Medical Veteran's Administration Hospital for repair of his left ureter. When admitted, urine was abnormally pooling inside the Plaintiff's body and coming out through the Plaintiff's skin. The Plaintiff admits that he knew at that time that he had a problem (St. John Depo. at p. 52). On September 21, 1984, the Plaintiff signed consent forms for surgical repair of his left ureter. The procedure was performed and the Plaintiff was discharged from the hospital on November 30, 1984.

On or about May 19, 1985, the Plaintiff again presented himself at the emergency room with an obstructed left ureter, and thereafter was scheduled for further surgical repairs. On July 16, 1985 and on July 23, 1985, the Plaintiff signed two separate consent forms for the re-attachment of his ureter to his bladder. On July 24, 1985, the Plaintiff underwent surgical repairs, and was discharged from the hospital on August 16, 1985.

In the instant Motion For Summary Judgment (DE 55), the Defendant asserts that this Court is without subject matter jurisdiction over this matter because the Plaintiff has failed to file a claim with the Department of Veterans Affairs within the applicable statute of limitation. Conversely, the Plaintiff asserts that the Court should apply the doctrine of equitable tolling to his claim.

## SUMMARY JUDGMENT

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

To summarize, the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507 (11th Cir.1987). The standard for granting summary judgment is the same as the standard for granting a directed verdict. *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Appellate Courts generally, therefore, will affirm the granting of summary judgment if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury. *Anderson,* 477 U.S. at 252–256, 106 S.Ct. 2505; *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607 (11th Cir.1987). The evidence of the non-movant is to be believed, however, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes,* 814 F.2d at 609; *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580 (11th Cir.1986).

Nevertheless, where the moving party properly supports the motion for summary judgment, "the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must, through affidavits or as otherwise provided in Fed. R.Civ.P. 56," "designate 'specific facts showing that there is a genuine issue for trial.' " *L.S.T., Inc. v. Crow,* 49 F.3d 679, 684 (11th Cir.1995) (citations omitted).

### FTCA LIMITATION PERIOD

Title 28, United States Code, Section 2401(b) provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

While the Plaintiff does not dispute the applicability of § 2401(b) to the facts of the instant case, the Plaintiff asserts that the doctrine of equitable tolling should excuse any error in timely filing this matter. Upon review of the court file herein, however, the Court finds that the doctrine of equitable tolling should not be applied to this matter. Therefore, the Court finds that it is without subject matter jurisdiction over the above-styled cause.

■ As noted above, pursuant to § 2401(b), a tort claim against the United States is time-barred unless it is filed within two years after such claim "accrues." In the context of medical malpractice, a "claim under the FTCA 'accrues' when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant." *Price v. United States,* 775 F.2d 1491, 1493 (11th Cir.1985). For the limitation period to begin to run, a plaintiff need only know of the "critical facts" concerning his injury and its cause; he need not know that the acts inflicting his injury were negligent. *United States v. Kubrick,* 444 U.S. 111, 118–22, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Once a plaintiff has discovered that his injuries are "probably attributable to some act of those who treated [him], there is no longer any reason to toll the statute of limitation." *Price,* 775 F.2d at 1493.

■ In the instant case, the following facts demonstrate that by June 21, 1984, the Plaintiff knew or should have known of the "critical facts" of his injury and its cause. Specifically, after the May 21, 1984 surgery, during which the Plaintiff's ureters were cut, he was unable to urinate. On June 7, 1984, a tube was inserted into the Plaintiff's body in the kidney area so that urine could collect in an external bag. The Plaintiff has admitted that about the time he was discharged from the hospital on June 21, 1984, he was informed that his "bladder" had been injured during surgery. Based on the readily apparent nature of the Plaintiff's injury and the Plaintiff's own admission, the Court finds that statute of limitation began to run on June 21, 1984.

Even if the Plaintiff did not possess the "critical facts" on June 21, 1984, the Court finds that the Plaintiff did possess the requisite "critical facts" at least by September 21, 1984. Specifically, on Septem-

ber 13, 1984, the Plaintiff was admitted to the hospital because urine was coming out of the Plaintiff's stomach through his skin. Upon admission, the Plaintiff's chart states: "patient states I am here because I need surgical repairs on my left ureter" (DE 52 at p. 5 and attached Exh. 13). On September 21, 1984, the Plaintiff signed a consent form for the repair of his ureter (DE 52, attached Exh. 16; DE 57 pp. 53–54). Clearly by September 21, 1984, the Plaintiff knew that the injury to his ureter was "probably attributable" to the action of the Bronx Medical Veteran's Administration Hospital's surgeons. Although in 1984 the Plaintiff was armed with the "critical facts," to enable him to conduct an inquiry, the Plaintiff failed to file his Standard Form 95 until February 10, 1998, more than eleven years after the two-year statutory requirement had run.

The Plaintiff has asserted two theories upon which he contends the FTCA's two-year limitation period should be equitably tolled: (1) the continuous treatment doctrine; and (2) the active concealment doctrine. Under the continuous treatment doctrine, some courts have held that where a plaintiff is in the continuous care of a negligent actor for the same injury out of which the cause of action arose, the statute of limitation may be tolled under some circumstances until the end of the course of treatment. *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir.1988). *But see, Tyminski v. United States*, 481 F.2d 257, 264 n. 4 (disapproving of continuous treatment doctrine in FTCA cases as violative of congressional intent to induce prospective plaintiffs to promptly investigate possible claims).

■ Two rationales have been identified in support of the continuous treatment doctrine. First, it is unreasonable to expect a patient in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries. *Id.* at 1080–81. Such a rationale is inapplicable where, as here, the gravity of the Plaintiff's injuries is apparent to the Plaintiff.

*Id.* at 1081; *Reilly v. United States,* 513 F.2d 147, 150 (8th Cir.1975); *Ashley v. United States,* 413 F.2d 490, 492 (9th Cir. 1969); *Brown v. United States,* 353 F.2d 578, 580 (9th Cir.1965). Specifically, the Plaintiff has admitted under oath that his physician informed him that his "bladder" had been injured during surgery. This admission, coupled with the medical records containing the Plaintiff's statements to hospital staff on September 13, 1984, November 13, 1984, and June 19, 1985, as well as the numerous consent forms he signed, all demonstrate that the Plaintiff knew that his left ureter had been harmed and needed repair. Moreover, on September 13, 1984, when the Plaintiff was admitted to the hospital, he had urine coming out of his skin. In view of the apparent severity of the Plaintiff's injury and the aforementioned statements, the Court finds that the continuous treatment doctrine is inapplicable based on the first rationale.

The second rationale for the continuous treatment doctrine is that it would be unreasonable to expect a patient to interrupt corrective treatment by bringing suit while still under continuing care. *Id.* at 1081. Here, however, the interruption of corrective treatment rationale fails to save the Plaintiff's claim. While it may be unreasonable to expect the Plaintiff to sue while he still was under Dr. Steinhagen's care, by August 16, 1985, all of the Plaintiff's corrective treatment relating to his injury had been completed. Therefore, at most, the statute would be tolled until August 16, 1985; the Plaintiff, however, waited twelve more years to file his claim. Moreover, even if the Plaintiff's last visit with Dr. Steinhagen on June 28, 1990 for a prescription refill were considered part of his continuous treatment, the Plaintiff still waited more than six years beyond the two-years limitation period to file his Standard Form 95.

■ The Plaintiff also asserts that because he has been continuously treated at some Veteran's Administration hospital,

the statute of limitations should be tolled until he actually received his medical records in 1996. Courts, however, consistently have rejected this contention where, as here, a patient receives improper care from one government physician and thereafter is treated by other physicians not accused of malpractice at facilities owned and operated by the government. *Dundon v. United States,* 559 F.Supp. 469, 473 (E.D.N.Y.1983) (citing *Camire v. United States,* 535 F.2d 749, 750 (2nd Cir.1976)); *Miller v. United States,* 932 F.2d 301, 305 (4th Cir.1991); *Brown v. United States,* 353 F.2d 578, 580 (9th Cir.1965).

Here, Dr. Steinhagan, the alleged tortfeasor, and Dr. Ciaverra, the urologist who surgically repaired the Plaintiff's ureter, treated the Plaintiff until August 16, 1985. From July 31, 1986 until March 29, 1996, a period of more than nine years, the Plaintiff's medical records do not contain any record of urological (i.e. relating to ureter, kidney, bladder, or urethra) problems, consultations, or treatments (DE 52, attached Exh. B at p. 12 ¶ 40). On June 28, 1990, the Plaintiff attended his last visit with Dr. Steinhagan to obtain a prescription refill. Even if that last visit were considered continuous treatment, the Plaintiff still waited more than six-years beyond the two-year limitation period to file his Standard Form 95 claim. Based on the foregoing, the Court finds that the statute of limitation should not be tolled based on the continuous treatment doctrine.

The Plaintiff next contends that the limitation period should be equitably tolled because the physicians at the Bronx Medical Veteran's Administration Hospital actively concealed his injuries. The Court notes that some courts have allowed a delay in the accrual of a FTCA claim based on fraud, misrepresentation, or deceit. To delay accrual on this ground, a plaintiff must show that the defendant played a "wrongful role" in concealing the wrongdoer's identity. *Diminnie v. United States,* 728 F.2d 301, 305 (6th Cir.1984); *Gonzalez–Bernal v. United States,* 907 F.2d 246, 250 (1st Cir.1990).

Here, the Plaintiff asserts that the Defendant concealed his injury based on two acts. First, the Plaintiff asserts that although Dr. Steinhagan told the Plaintiff in 1984 that his "bladder" had been injured, a medical distinction exists between the bladder and the ureter. Even if such a medical distinction exists, the important point is that the Plaintiff was told in 1984 that an organ that was part of the Plaintiff's urinary tract had been injured. Moreover, the numerous consent forms and the statements the Plaintiff made to hospital staff also undermine any assertion that the Defendant played a "wrongful role" in concealing the Plaintiff's injury or the wrongdoer's identity. Thus, the Court finds that the Defendant did not play a "wrongful role" by telling the Plaintiff that his "bladder" had been injured.

Second, the Plaintiff claims that the Defendant concealed his injury because in 1996, the Plaintiff received a medical report dated May 23, 1984, which states "complication none" during his 1984 surgery. The Court finds that this singular notation, which the Plaintiff did not receive until twelve years after the alleged injury, fails to support his claim that the Defendant played a "wrongful role" in concealing his injury. Even assuming arguendo that it does, by 1996, the Plaintiff's recovery already was barred by the statute of limitation. *Davis v. United States,* 642 F.2d 328, 331 (9th Cir.1981).

In light of the foregoing, the Court finds that application of the doctrine of equitable tolling is not warranted under the facts of this case. Accordingly, the Court agrees with the Defendant's claim that the above-styled cause is barred as untimely filed. Thus, this Court is without subject matter jurisdiction over this matter.

Upon careful review of the entire Court file herein, the Court finds that the Defendant, United States of America, has successfully carried its burden of setting forth

facts in its pleadings, supporting affidavits, and exhibits which indicate that there is no genuine issue of material fact, and that the Defendant, United States of America, is entitled to judgment as a matter of law.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that the Defendant, United States of America's Motion To Dismiss/Motion For Summary Judgment, which this Court construes as a Motion For Summary Judgment (DE 55) be and the same is hereby **GRANTED.** Final Summary Judgment is hereby entered in favor of the Defendant, United States of America, and against the Plaintiff, William St. John. Said Plaintiff shall take nothing by this action and said Defendant shall go hence without day.

To the extent not otherwise disposed of herein, all pending Motions are hereby **DENIED** as moot.