**Zulay RENDON, Individually and as parent and natural guardian of Karina Garcia, a minor**

**v.**

**UNITED STATES of America et al.**

**Civil Action No. 99–5912.**

United States District Court,
E.D. Pennsylvania.

May 22, 2000.

John J. Speicher, Rhoda, Stoudt, Bradley, Reading, PA, for Zulay Rendon.

James G. Sheehan, Annetta Foster Givhan, U.S. Attorney's Office, Philadelphia, PA, for Philadelphia Health Services, United States of America.

Kevin C. Cottone, White and Williams, LLP, Philadephia, PA, for Episcopal Hospital.

James L. Moore, Jr., Philadelphia, PA, for Dr. Harshad.

### MEMORANDUM

LUDWIG, District Judge.

Defendant United States moves to dismiss this action on the ground that it is barred by the Federal Torts Claims Act, 28 U.S.C. § 1346. Fed.R.Civ.P. 12. Jurisdiction results from the substitution of the United States as a defendant. 28 U.S.C. § 1346.

Plaintiff Zulay Rendon is the parent of Karina Garcia, a minor, whose care by a number of physicians is alleged to have resulted in a condition known as avascular necrosis.[1] On September 17, 1999 this medical malpractice action was begun in the Common Pleas Court of Philadelphia, and on November 24, 1999 it was removed here by the United States. On January 11, 2000 an order was entered substituting the United States for defendant Philadelphia Health Services (PHS), in that PHS was a covered entity under the Public Health Service Act and, therefore, subject to the protections of the Federal Torts Claims Act (FTCA).

According to the amended complaint, on July 22, 1996, Zulay Rendon first took her then 10-year old daughter, Karina Garcia, to PHS with complaints of pain in her right hip.[2] Amended complaint at ¶ 9. When Karina returned to PHS on two more occasions with similar complaints, she was given Motrin to alleviate her pain. *Id.* at ¶¶ 10–13. On October 4, 1996, Kari-

na fell and broke two toes in her left foot. On November 20, 1996, Karina fell down a stairway at school, injuring her hip.[3] *Id.* at ¶ 17. At St. Christopher's Hospital, she was diagnosed with slipped capital femoral epiphysis[4] on the right side, and underwent surgery the following day for hip repair. *Id.* at ¶¶ 18–19. Two screws were inserted, and although Rendon was told her daughter would make a full recovery, Karina continued to experience both pain and limited motion.

On August 4, 1997, to alleviate her continuing pain, the screws were removed. When the pain did not subside, a right hip arthogram and x-rays confirmed the presence of avascular necrosis. *Id.* at ¶¶ 21–22. Karina's hip pain persisted, and on October 26, 1998, Rendon was advised that Karina needed additional surgery and that avascular necrosis had developed in her right femur.[5] On February 9, 1999, upon inquiry by her counsel, Rendon learned that Karina's hip pain was caused by a slipped capital femoral epiphysis—the failure to diagnosis and treat her condition having preceded the avascular necrosis.

The United States moves to dismiss on two grounds—first, that plaintiff has not exhausted her administrative remedies; and second, that her claim is time-barred. Defendant Episcopal Hospital opposes the dismissal arguing that the United States should remain a defendant in this action

---

1. According to plaintiff's response, avascular necrosis is caused by a deficient blood supply to a particular area, causing cell or bone death—in this case, the hip area.

2. Rendon, who is a native of Venezuela, does not speak English. She relied on interpreters, including Karina, when discussing her medical problems.

3. It is unclear whether the fall resulted from instability caused by her recent foot injury or as a result of a hip injury sustained the previous summer—the amended complaint and plaintiff's response to the United States' motion differ in this regard.

4. According to plaintiff's response, the epiphysis is located at the end of the femur, separated from the bone by the growth plate and

nutrient arteries. It is covered by cartilage that provides a cushion and protects it from various movements and weight-bearing activities. The condition of slipped capital femoral epiphysis occurs when the epiphysis moves out of place and, in some circumstances, may compromise the blood flow to the epiphysis. Resulting symptoms usually include hip stiffness, pain, and gradual limitation of motion. If not treated, this condition can lead to collapse of the epiphysis and avascular necrosis.

5. Whether Rendon was informed previously that her daughter had a slipped capital femoral epiphysis or of the presence of avascular necrosis is unclear.

because of valid cross-claims for indemnification and contribution.

■ Given this history, plaintiff's claim cannot be said to be exhausted. Section 2675(a) of the Federal Tort Claims Act provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing ...

28 U.S.C. § 2675. Only recently, as of January 26, 2000, did plaintiff file a claim with the "appropriate agency," the Department of Health and Human Services (HHS), and HHS has not taken any action to date. Since exhaustion is a prerequisite to federal jurisdiction, the United States' motion must be granted and this action dismissed pending a determination by HHS. However, since jurisdiction is premised upon the United States remaining a defendant, the limitations issue will also be considered.

The FTCA requires that any action must be commenced within a two-year period from accrual of the claim.

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). On September 17, 1999, plaintiff filed this action in state court. Given the tolling effect of the filing, if plaintiff's claim accrued prior to September 17, 1997, this action is now time-barred.[6]

■ Under § 2401 of the FTCA, a medical malpractice claim accrues when a plaintiff knows of both the existence and the probable cause of his injury—not when plaintiff knows or should know "that the doctor who caused his injury was legally blameworthy." *United States v. Kubrick,* 444 U.S. 111, 121–22, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979). In *Kubrick,* plaintiff underwent surgery on his right femur, during the course of which he was given an antibiotic, neomycin. *Id.* at 113, 100 S.Ct. 352. Six weeks after leaving the hospital, plaintiff began to experience hearing loss. *Id.* at 113, 100 S.Ct. 352. Later, he was informed by a specialist that the hearing loss was caused by the neomycin administered during the surgery. *Id.* at 113–14, 100 S.Ct. 352. It was at this time, the Court said, that "plaintiff [was] in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.* at 122, 100 S.Ct. 352.

Our Court of Appeals has interpreted *Kubrick* twice. In *Zeleznik v. United States,* 770 F.2d 20, 23 (3d Cir.1985), it was noted that "the crucial question in determining the accrual date ... was whether the injured party had sufficient notice of the invasion of his legal rights to require that he investigate and make a timely claim or risk its loss." "Once an injured party learns of his injury and its immediate cause, then he is on the same footing as any other injured party." *Id.* at 24. The test is an objective one—and "the Court was not concerned with whether plaintiff actually knew of the malpractice, but whether he possessed the facts such that, as a reasonable person, he should

**6.** "Both the FTCA and the [Public Health Service Act] provide procedural protections for Plaintiffs who failed to first file an administrative claim with the appropriate agency. *See* 42 U.S.C. [§ ] 233(c); 28 U.S.C. § 2679(d)(5). Thus, even though plaintiff's may be inconvenienced by their failure to first file an administrative complaint with the Department of Health and Human Services, they will not be prejudiced because the running of any statute of limitations period will have been suspended during the pendency of their civil action." *Rosario v. Estado Livre Asociado De Puerto Rico,* 52 F.Supp.2d 301, 304 (D.P.R.1999) (citations omitted).

have known of the malpractice." *Barren v. United States,* 839 F.2d 987, 990 (3d Cir.1988).

█ Here, plaintiff's medical malpractice claim is atypical in that it arises from an omission (failure to diagnose and treat) rather than from an affirmative act, the result of which led to the onset of the condition at issue, avascular necrosis.

> When a claim of medical malpractice is based on failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. In this type of case, it is only when the patient becomes aware or through the exercise of reasonable diligence should of become aware of the development of a preexisting problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b).

*Augustine v. United States,* 704 F.2d 1074, 1078 (9th Cir.1983).

The injury to Karina was the development of a potentially treatable condition, slipped capital femoral epiphysis, into a severe debilitating condition, avascular necrosis. Rendon's claim accrued when a reasonable person would have realized that Karina's condition was much worse than previously considered, and that the cause may have been the prior omission of a treating physician. That determination, however, may be a complex one.

Until the plaintiff knows that he has been injured and by whom or by what, he has no reason to take steps to determine whether he might have legal claim. This is obvious if he doesn't even know that he has been injured, a distinct possibility in medical malpractice cases because medical interventions can have adverse consequences that do not manifest themselves for months or years or even decades. Even if he knows that he is injured, if he does not know who or what inflicted the injury, he again has no reason to suppose that he might have a legal claim against someone. This is a common problem in medical malpractice cases, for it is often unclear whether symptoms that appear in the wake of a medical intervention are the consequence of whatever underlying health problem led to the intervention, in which event there is no basis for the legal claim, or of the intervention itself.

*Goodhand v. United States,* 40 F.3d 209, 212 (7th Cir.1994).

Similar problems are evident here. Karina went to PHS with repeated bouts of hip pain, at which time the slipped capital femoral epiphysis was not diagnosed. She continued to experience hip pain and eventually underwent surgery on her hip, at which time the screws were inserted. This event—major surgery—may have been enough to signal that something was seriously wrong, and perhaps put Rendon on notice of potential negligence.[7] However, the record at this point suggests that Karina fell on her hip, and therefore it may have been reasonable to attribute her increased pain and the resulting surgery to the fall, rather than a previous undiagnosed condition. Moreover, the continued hip pain experienced post-surgery, eventually culminating in the removal of the

---

**7.** Other Courts of Appeal have held that a claimant's minority status does not toll the statute of limitations. *See MacMillan v. United States,* 46 F.3d 377 (5th Cir.1995); *Landreth v. United States,* 850 F.2d 532 (9th Cir. 1988); *Vega–Velez v. United States,* 800 F.2d 288 (1st Cir.1986); *Jastremski v. United* *States,* 737 F.2d 666 (7th Cir.1984); *Smith v. United States,* 588 F.2d 1209 (8th Cir.1978). Instead, a parent's knowledge of a child's injuries is imputed to the child. *See MacMillan,* 46 F.3d at 381; *Landreth,* 850 F.2d at 534.

screws, could have been traceable to exactly that—the screws—not a prior condition. Ordinarily, determining reasonableness is often a question for a jury, and, in this instance, without a fully developed factual record, this issue is not ready for a ruling.

Accordingly, since plaintiff's claim is not exhausted, the action will be dismissed pending administrative review, and no ruling is made on the limitations issue at this time. Likewise, Episcopal Hospital's objection is denied without prejudice to later assertion.